J-A22042-21

2021 PA Super 239

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| CHRISTOPHER S. MULLEN | : | |
| | : | |
| Appellant | : | No. 571 MDA 2021 |

Appeal from the PCRA Order Entered April 20, 2021
In the Court of Common Pleas of Lycoming County
Criminal Division at No(s):  CP-41-CR-0001030-2017

BEFORE:  BOWES, J., OLSON, J., and KING, J.

OPINION BY KING, J.:                        **FILED: DECEMBER 8, 2021**

Appellant, Christopher S. Mullen, appeals from the order entered in the Lycoming County Court of Common Pleas, which denied his petition filed pursuant to the Post Conviction Relief Act ("PCRA").[1]  We affirm.

The relevant facts and procedural history of this case are as follows.  In 2017, Appellant was under the supervision of the Pennsylvania Board of Probation and Parole.  While under supervision, Appellant absconded, which resulted in an arrest warrant for Appellant.  On June 7, 2017, Parole Agent Michael Barvitskie received an anonymous tip regarding Appellant's whereabouts.  Specifically, the caller said Appellant was residing at 408 Anthony Street in Williamsport, which was the residence of Appellant's former

_____

[1] 42 Pa.C.S.A. §§ 9541-9546.

paramour.[2]  The caller indicated there might be drugs and guns in the home, and that Appellant was present at that location the night before.  Following some investigation, Agent Barvitskie learned that 408 Anthony Street was half a double home; Appellant's mother lived on one side of the home at 406 Anthony Street.  Shortly after receiving the anonymous tip that morning, parole agents and other law enforcement surrounded the property.[3]  Agent Barvitskie observed Appellant through one of the windows of 408 Anthony Street and ordered him to come to the door.  Appellant refused the commands and closed the blinds to the window.  After agents knocked on the door, another male, Mr. Miller, answered the door.  Mr. Miller initially denied that Appellant was present but eventually admitted that Appellant was inside.  Upon entry, agents observed guns and drugs in the home.  Agents ultimately located Appellant in the crawl space/attic of the property.  A Special Response Team had to pull Appellant out through the ceiling on Appellant's mother's side of the home.  After Appellant's apprehension, police secured a search warrant for the property.

The Commonwealth charged Appellant with various drug and gun related offenses.  Attorney Joshua Bower entered his appearance as Appellant's counsel on July 12, 2017.  Appellant filed a suppression motion on

---

[2] Appellant's approved parole residence was 412 Anthony Street in Williamsport.

[3] The agents were assisted by U.S. Marshals.

- 2 -

August 10, 2017. Appellant argued the anonymous tip was unreliable, and the agents lacked reasonable suspicion or probable cause to enter the residence based on the tip. Based on the law at the time, Appellant conceded: "Where authorities have a reasonable belief that the subject of an arrest warrant lives within a given premises, they can enter the home and arrest the suspect without a search warrant," citing this Court's decision in **Commonwealth v. Romero**, 138 A.3d 21, 25 (Pa.Super. 2016), *rev'd*, 646 Pa. 47, 183 A.3d 364 (2018). (Suppression Motion, filed 8/10/17, at ¶13). Appellant claimed the anonymous tip was insufficient on its own to provide a reasonable belief that Appellant was in the home, such that all evidence recovered should be suppressed. Because the search warrant was based on observations made during the allegedly illegal entry, Appellant argued that any evidence recovered must also be suppressed as fruit of the poisonous tree.

The court held a suppression hearing on October 12, 2017, at which Agent Barvitskie testified about the events leading up to Appellant's apprehension. Appellant argued that the anonymous tip was an insufficient basis for a reasonable belief that Appellant was inside the home. Appellant conceded that if the court found the agent's testimony credible regarding his observation of Appellant through the window, that would be enough to create a reasonable belief that Appellant was in the home. The next day, the court denied Appellant's suppression motion.

In December 2017, Attorney Bower left the Public Defender's Office. Attorney Matthew Welickovitch subsequently entered an appearance on Appellant's behalf. On January 22, 2019, Appellant filed a motion *in limine* seeking to suppress the evidence, citing the Supreme Court's decision in **Romero**, which was filed on April 26, 2018. Appellant claimed he just became aware of the Supreme Court's ruling in **Romero**, which Appellant said stood for the proposition that the agents were required to obtain a search warrant prior to entering 408 Anthony Street. (Motion *in Limine*, filed 1/22/19, at ¶¶16-17). The next day, the court denied Appellant's motion *in limine* as untimely and waived, stating defense counsel was informed of the Supreme Court's **Romero** decision on September 30, 2018.

On February 15, 2019, the court convicted Appellant of two counts of persons not to possess firearms, and one count each of possession of a controlled substance, and possession of drug paraphernalia. The court sentenced Appellant on April 2, 2019, to an aggregate term of 6 to 13 years' imprisonment. On April 17, 2019, Appellant filed a post-sentence motion, which the court denied as untimely on June 12, 2019. Appellant did not file a direct appeal.

Following submission of a *pro se* PCRA petition, the court appointed Attorney Jeana Longo to represent Appellant. Counsel filed an amended PCRA petition on August 5, 2019, seeking reinstatement of Appellant's direct appeal rights *nunc pro tunc*. The PCRA court granted relief on October 3, 2019, and

Appellant timely filed a *nunc pro tunc* appeal on October 14, 2019.

On appeal, Appellant argued the trial court erred in failing to suppress evidence obtained pursuant to a warrantless search of a third-party residence, in the absence of exigent circumstances. On May 22, 2020, this Court affirmed Appellant's judgment of sentence, deciding Appellant's issue was waived. ***See Commonwealth v. Mullen***, 237 A.3d 479 (Pa.Super. 2020) (unpublished memorandum). Specifically, this Court said Appellant's complaint in his suppression motion and at the suppression hearing was that the agents lacked a sufficient belief that Appellant was inside the residence prior to their entry; whereas, on appeal, Appellant claimed the agents lacked a search warrant authorizing entry into the residence or exigent circumstances. ***See id.***

On June 8, 2020, Appellant filed a *pro se* PCRA petition alleging ineffective assistance of trial and appellate counsel, where counsels' errors waived Appellant's suppression issue. The court subsequently appointed PCRA counsel. The court held a PCRA hearing on February 5, 2021, at which Agent Barvitskie, Attorney Bower, and Attorney Longo testified. Following the submission of post-hearing briefs, the court denied PCRA relief on April 20, 2021.

Appellant timely filed a notice of appeal on April 29, 2021. On May 3, 2021, the court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant timely filed his Rule 1925(b) statement the next day.

Appellant raises one issue for our review:

> Trial counsel and appellate counsel were ineffective for failing to correctly pursue suppression of the evidence obtained as a result of the warrantless entry of a third party residence and the [PCRA] court erred in failing to grant [Appellant's PCRA] petition requesting suppression of all items seized as a result of this warrantless entry as well as by failing to vacate Appellant's conviction and sentence.

(Appellant's Brief at 4).

Our standard of review of the denial of a PCRA petition is limited to examining whether the evidence of record supports the court's determination and whether its decision is free of legal error. *Commonwealth v. Conway*, 14 A.3d 101 (Pa.Super. 2011), *appeal denied*, 612 Pa. 687, 29 A.3d 795 (2011). This Court grants great deference to the findings of the PCRA court if the record contains any support for those findings. *Commonwealth v. Boyd*, 923 A.2d 513 (Pa.Super. 2007), *appeal denied*, 593 Pa. 754, 932 A.2d 74 (2007). We do not give the same deference, however, to the court's legal conclusions. *Commonwealth v. Ford*, 44 A.3d 1190 (Pa.Super. 2012). "A PCRA court passes on witness credibility at PCRA hearings, and its credibility determinations should be provided great deference by reviewing courts." *Commonwealth v. Johnson*, 600 Pa. 329, 356, 966 A.2d 523, 539 (2009).

Appellant argues that all prior counsel failed to preserve his claim that the parole agents' entry into a third-party residence was unlawful absent a search warrant or exigent circumstances. Appellant asserts counsels' waiver of the issue establishes the arguable merit prong of the ineffectiveness test.

Appellant claims the only dispute is whether he can establish prejudice. Appellant insists he can establish prejudice because his suppression claim would have been successful but for counsels' errors in waiving it.

Appellant contends that under the Supreme Court's decision in **Romero**, a magistrate must determine that officers have probable cause to believe the residence in question is the residence of the person sought to be arrested prior to the officers' entry into a home. Appellant maintains law enforcement lacked probable cause to believe Appellant resided at 408 Anthony Street. Although the agents had an arrest warrant for Appellant, Appellant avers the arrest warrant did not list 408 Anthony Street as Appellant's residence. Appellant emphasizes Agent Barvitskie's testimony that he did not obtain a search warrant based solely on the anonymous tip because the agent did not believe the tip, alone, was sufficient to establish probable cause to enter the residence.[4] Appellant suggests exigent circumstances were not present in this case, distinguishing these facts from those where police are in hot pursuit of a fugitive. To the extent exigent circumstances ensued, Appellant insists those circumstances were created by the agents when they knocked on the door and demanded that Appellant exit the premises. Appellant submits the

---

[4] At the PCRA hearing, Agent Barvitskie testified that the agents went to 408 Anthony Street shortly after receiving the tip to investigate the credibility of the tip. It was during their investigation of the home that Agent Barvitskie saw Appellant through the window. (**See** N.T. PCRA Hearing, 2/5/21, at 12-13).

Commonwealth could have kept the residence under surveillance even after making an initial determination that Appellant might be inside, keeping officers in relative safety until obtaining a search warrant. Appellant emphasizes that the Commonwealth offered no evidence to suggest that Mr. Miller, who answered the door, gave consent for the officers to search the premises or that law enforcement even asked Mr. Miller for permission. Under these circumstances, Appellant concludes counsel rendered ineffective assistance in waiving his suppression claim, and this Court must vacate Appellant's convictions and sentence, and remand for further proceedings. We disagree.

Pennsylvania law presumes counsel has rendered effective assistance. ***Commonwealth v. Williams***, 597 Pa. 109, 950 A.2d 294 (2008). When asserting a claim of ineffective assistance of counsel, the petitioner is required to demonstrate: (1) the underlying claim has arguable merit; (2) counsel had no reasonable strategic basis for his action or inaction; and, (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different. ***Commonwealth v. Kimball***, 555 Pa. 299, 724 A.2d 326 (1999). The failure to satisfy any prong of the test for ineffectiveness will cause the claim to fail. ***Williams, supra***.

"The threshold inquiry in ineffectiveness claims is whether the issue/argument/tactic which counsel has foregone and which forms the basis for the assertion of ineffectiveness is of arguable merit…." ***Commonwealth***

*v. Pierce*, 537 Pa. 514, 524, 645 A.2d 189, 194 (1994). "Counsel cannot be found ineffective for failing to pursue a baseless or meritless claim."

*Commonwealth v. Poplawski*, 852 A.2d 323, 327 (Pa.Super. 2004).

> Once this threshold is met we apply the 'reasonable basis' test to determine whether counsel's chosen course was designed to effectuate his client's interests. If we conclude that the particular course chosen by counsel had some reasonable basis, our inquiry ceases and counsel's assistance is deemed effective.

*Pierce, supra* at 524, 645 A.2d at 194-95 (internal citations omitted).

> Prejudice is established when [an appellant] demonstrates that counsel's chosen course of action had an adverse effect on the outcome of the proceedings. The [appellant] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. In [*Kimball, supra*], we held that a "criminal [appellant] alleging prejudice must show that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."

*Commonwealth v. Chambers*, 570 Pa. 3, 21-22, 807 A.2d 872, 883 (2002) (some internal citations and quotation marks omitted).

In **Romero**, Earnest Moreno had absconded from a halfway house while on state parole. A warrant was issued for Moreno's arrest, and Parole Agent Sean Finnegan undertook an investigation to locate Moreno. Ultimately, Agent Finnegan and other law enforcement attempted to execute the arrest warrant at the home of Moreno's half-brother, Angel Romero, and Romero's wife, Wendy Castro; Agent Finnegan believed this address was Moreno's most likely place of residence. The agents did not find Moreno in the residence but

observed suspected marijuana plants in the basement. Based on these observations, police obtained a search warrant which they executed on the premises. A search revealed drugs, a gun, and other contraband. The Commonwealth later charged Romero and Castro with drug-related offenses. *See Commonwealth v. Romero*, 646 Pa. 47, 60-61, 183 A.3d 364, 372 (2018) (plurality).

Romero and Castro subsequently filed suppression motions, which the trial court granted. The suppression court considered the law under *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), that "an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within."[5] *Id.* at 603, 100 S.Ct. at 1388. Based on the evidence presented at the suppression hearing, the court decided that "a reasonable belief could not have been formed to suggest Moreno lived in the Romero residence." *Id.* at 64, 183 A.3d at 374. Further, relying on *Steagald v. United States*, 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981)

---

[5] As this proposition of law was not the holding in *Payton*, the *Romero* Court referred to these remarks as "*Payton*'s dictum." *See Romero, supra* at 58 n.1, 80, 183 A.3d at 371 n.1, 383 (stating: "Given that *Payton*'s ruling addressed the absence of any warrant, its discussion concerning the derivative authority of arrest warrants was *dictum*). The sole question at issue in *Payton* was the constitutionality of warrantless entries into a suspect's home to effectuate his arrest; the Court held that the Fourth Amendment prohibits police from making a warrantless and nonconsensual entry into a suspect's home to make a felony arrest. *See Payton, supra* at 576, 100 S.Ct. at 1375.

(holding that warrant for individual's arrest does not authorize entry into home of third party not named in arrest warrant), the suppression court ruled that the authorities' entry into Romero and Castro's home was unlawful. The suppression court also decided that the defendants did not give the agents express permission to search the property. *Romero, supra* at 64, 183 A.3d at 374.

On appeal, this Court reversed and remanded for trial. In so doing, this Court held that where law enforcement has a reasonable belief that the subject of an arrest warrant lives at a certain location, they can enter the home and arrest the suspect without a search warrant. Because Agent Finnegan reasonably believed that Moreno's last place of address was Romero and Castro's home, and because the authorities possessed a valid arrest warrant for Moreno, this Court decided there was a legal basis to enter Romero and Castro's home without a search warrant. *See id.* at 67, 183 A.3d at 376.

The Supreme Court granted allowance of appeal. Justice Wecht delivered the Opinion Announcing the Judgment of the Court ("OAJC"),[6] analyzing "the interaction between *Payton* and *Steagald* in determining the scope of the authority provided by an arrest warrant to enter a private

---

[6] Justices Todd and Donohue joined the Opinion in full; Justice Mundy joined Part II(A) (regarding Romero and Castro's lack of express consent for law enforcement to search the home) and authored a separate concurrence. Justice Dougherty issued a concurring and dissenting opinion, joined by (then) Chief Justice Saylor and (now Chief) Justice Baer.

residence." ***Romero, supra*** at 69, 183 A.3d at 377. Prior to applying these decisions to the facts of ***Romero***, the OAJC explained in a footnote:

> This Court has considered ***Payton*** and ***Steagald*** on one prior occasion. In ***Commonwealth v. Stanley***, 498 Pa. 326, 446 A.2d 583 (1982), we addressed an **arrestee's** challenge to an entry into a third party's home. We concluded that ***Steagald*** was inapplicable because that decision "involved the Fourth Amendment rights of the third party owner ... and expressly did not adjudicate the rights of the suspect." ***Id.*** at 586 n.4. Because the third party's interest was not at issue in ***Stanley***, and could not be asserted vicariously by the arrestee, we held that ***Steagald*** did not control. In the instant cases, by contrast, we are presented with third-party challenges—a circumstance that squarely implicates the ***Steagald*** decision.

***Romero, supra*** at 73 n.6, 183 A.3d at 379 n.6 (emphasis in original).

Throughout its disposition, the OAJC reiterated the distinction between cases involving the Fourth Amendment rights of the subject of an arrest warrant versus those of the third-party owner of a home where police attempt to locate the subject of the arrest warrant. ***See id.*** at 97, 183 A.3d at 395 (stating: "[T]he dispositive distinction in ***Steagald*** was between the liberty interest of the arrestee and the privacy interest of a third party, and the Court's holding was compelled by the arrest warrant's satisfaction of the warrant requirement with regard to the former interest, but not the latter"). ***See also Steagald, supra*** at 221, 101 S.Ct. at 1652 (stating "an arrest warrant alone will suffice to enter a suspect's own residence to effect his arrest").

By contrast, the OAJC explained: "With regard to any **third party's**

- 12 -

**privacy interest** in the targeted space, the arrest warrant, standing alone, fails to satisfy the mandate of the warrant requirement." ***Romero, supra*** at 102, 183 A.3d at 397 (emphasis added). Thus, in evaluating the rights of the third-party owners Romero and Castro, the OAJC held:

> The Fourth Amendment protects the privacy interests in all homes. To overcome that privacy interest, a warrant used to enter a home must reflect a magisterial determination of probable cause to believe that the legitimate object of a search is contained therein. The form of the warrant is significant only in that it ordinarily signifies "what the warrant authorize[s] the agents to do." ***Steagald***, 451 U.S. at 213, 101 S.Ct. 1642. That is, the central distinction between an "arrest warrant" and a "search warrant" is the identification of the particular person or place that the magistrate has found probable cause to seize or to search. If an arrest warrant is based solely upon probable cause to seize an individual, then it authorizes precisely that seizure. If entry into a residence is necessary to search for that individual, then the warrant must reflect a magisterial determination of probable cause to search that residence, regardless of whether the warrant is styled as an "arrest warrant" or a "search warrant." **The critical inquiry is whether the warrant adequately addresses all of the Fourth Amendment interests that are implicated by the contemplated action.**

***Romero, supra*** at 111-12, 183 A.3d at 403-04 (internal footnotes omitted) (emphasis added). "Absent such a warrant, an entry into a residence is excused only by a recognized exception to the warrant requirement." ***Id.*** at 114, 183 A.3d at 406. In so holding, the OAJC essentially rejected the ***Payton*** *dictum*, deciding it must yield to ***Steagald***. ***Id.*** at 107, 183 A.3d at 400. Because the Commonwealth did not introduce the arrest warrant into evidence at the suppression hearing under the then-prevailing law, the OAJC remanded

to allow the Commonwealth the opportunity to introduce the arrest warrant into evidence. Upon remand, the suppression court could decide whether the contents of that warrant reflected the magistrate's determination of probable cause to search Romero and Castro's home. *Id.* at 115, 183 A.3d at 406.

Justice Mundy authored a concurrence joining the OAJC's "resolution of the factual consent issue in full" and agreeing "with a significant portion of the lead opinion's reasoning as well as its mandate to remand to the trial court to give the Commonwealth the opportunity to introduce the arrest warrant to ascertain whether it provided a basis for the search of [Romero and Castro's] home." *Id.* at 116, 183 A.3d at 406. Justice Mundy's primary disagreement with the OAJC concerned its rejection of the *Payton* *dictum*. Instead, Justice Mundy viewed "*Payton* as its own constitutional rule requiring: (1) a valid arrest warrant; (2) probable cause that the home in question is the arrestee's residence; and (3) probable cause that the arrestee will be found at that home in the moment the search is effectuated." *Id.* at 118, 183 A.3d at 407.

Justice Dougherty authored a concurring and dissenting opinion, distancing himself from (1) the OAJC's reference to the relevant language from *Payton* as the "*Payton* *dictum*" and its subsequent treatment of that language; and (2) the OAJC's conclusion that the Fourth Amendment requires police to obtain a search warrant every time they wish to search a residence for the subject of an arrest warrant. Justice Dougherty also dissented from the OAJC's remand for further proceedings, stating he would simply reverse

and reinstate the suppression court's order granting Romero and Castro relief. *Id.* at 120-21, 183 A.3d at 409.

In **Stanley, supra**, which our Supreme Court distinguished in footnote six of **Romero**, police obtained an arrest warrant for the appellant following his escape from prison. After seeing the appellant's picture in the paper, Carmen Sperduto called police and stated that he might know the appellant's whereabouts. Mr. Sperduto took police to Jacqueline Keim's apartment, where Mr. Sperduto believed the appellant was staying. Police called for reinforcements but did not obtain a search warrant. After no one answered their "knock and announce," police forced open the door. Police ultimately apprehended the appellant from the apartment and seized a revolver that was within the appellant's reach. The appellant filed a suppression motion, which the court denied. This Court affirmed, and our Supreme Court granted allowance of appeal. **See id.** at 331-32, 446 A.2d at 585-86.

Our Supreme Court explained:

> A valid arrest warrant and mere "reason to believe" that appellant was within was all that the police needed to enter. More stringent requirements—a search warrant or probable cause—were wholly unnecessary. **See** [**Payton, supra**] (police armed with an arrest warrant and "reason to believe" that a suspect is within can enter a suspect's own home and seize evidence in plain view);[7] **Commonwealth v. Williams**, 483 Pa. 293, 396 A.2d 1177 (1978), *cert. den.*, 446 U.S. 912, 100 S.Ct. 1843, 64 L.Ed.2d 266 (1980).[4] The police, relying on Mr. Sperduto's information, had "reason

---

[7] To repeat, this portion of **Payton** is what the OAJC in **Romero** refers to as "**Payton**'s *dictum*."

- 15 -

to believe" that appellant was in Ms. Keim's apartment. The **Payton v. New York** and **Commonwealth v. Williams** cases, which apply to searches of a suspect's own home, also govern appellant's case. Fourth Amendment claims involve the accused's "legitimate expectation of privacy" in the areas searched. **See Rakas v. Illinois**, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); **Commonwealth v. Wagner**, 486 Pa. 548, 406 A.2d 1026 (1979). If an arrest warrant and "reason to believe" that a suspect can be found on the premises are sufficient for police to invade a suspect's own home, then these facts are sufficient to invade a third party's premises, where a suspect's expectation of privacy is necessarily less.

> [4] **Commonwealth v. Shaw**, 476 Pa. 543, 383 A.2d 496 (1978), which held that absent exigent circumstances, police must have probable cause to enter a suspect's own home to effect a warrantless arrest, is inapplicable to this case. Appellant was the subject of a valid arrest warrant. Moreover, appellant mistakenly relies on [**Steagald, supra**], which determined that absent exigent circumstances, police need a search warrant to enter premises belonging to a third party, even though police had a valid warrant to arrest a suspect. The **Steagald** case involved the Fourth Amendment rights of the third party owner (whose cocaine was seized) and expressly did not adjudicate the rights of the suspect (who was not even found.) **Id.** at 219–220, 101 S.Ct. at 1651. At any rate, it would be anomalous to interpret **Steagald v. United States** to afford appellant more rights in Ms. Keim's apartment than he would have in his own home under **Payton v. New York**.

**Stanley, supra** at 333-34, 446 A.2d at 586-87.

Instantly, Appellant's reliance on **Romero** affords him no relief because that case is factually distinguishable. There, the Court addressed the rights of third parties who were not the subject of an arrest warrant. The OAJC made clear throughout its disposition that the facts of **Romero** were distinguishable

from those scenarios involving an arrestee's rights. *See Romero, supra* at 73 n.6, 97, 102, 183 A.3d at 379 n.6, 395, 397.

Rather, the facts of this case are governed by *Stanley*.[8] *See Stanley, supra*. Here, as in *Stanley*, police had a valid arrest warrant for Appellant. Agent Barvitskie testified that he received an anonymous tip that Appellant was at 408 Anthony Street in Williamsport the night before. When agents arrived at 408 Anthony Street shortly after receiving the tip, Agent Barvitskie personally observed Appellant through the window. Under *Stanley*, a valid arrest warrant and Agent Barvitskie's reasonable belief that Appellant was inside were all that the agents needed to enter the third-party residence for purposes of protecting **Appellant's** Fourth Amendment rights.[9] *See Stanley, supra*.

Further, as the PCRA court noted: "Here, unlike *Romero*, [Appellant] was the subject of the warrant and law enforcement had probable cause to believe that [Appellant] was inside the residence based on the tip, Agent

_____

[8] We reiterate that the *Romero* Court did not overrule the Court's prior decision in *Stanley* but distinguished it from the facts of *Romero*.

[9] Although the OAJC in *Romero* rejected the "reasonable belief" + "arrest warrant" standard discussed in *Payton*'s *dictum*, it is clear the Court did so with respect to analyzing the Fourth Amendment rights of third parties, not those of the subject of the arrest warrant. In any event, the OAJC's rejection of *Payton*'s *dictum* did not garner the support of a majority of the Justices, so it is not binding on us. *See Commonwealth v. Davis*, 17 A.3d 390 (Pa.Super. 2011), *appeal denied*, 611 Pa. 678, 29 A.3d 371 (2011) (stating general rule that decision lacks precedential value if it does not garner support of majority of sitting judges).

Barvitskie's observations and the confirmation by the individual who answered the door." (*See* PCRA Order and Opinion, filed 4/20/21, at 8). We agree with the PCRA court that law enforcement had probable cause under these facts, which was more than the "reasonable belief" + "arrest warrant" held lawful in *Stanley*. *See Stanley, supra*. As the *Stanley* Court indicated, it would be anomalous to provide Appellant more rights in a third-party residence than he would have in his own home. *See id.* Based upon the foregoing, we agree with the PCRA court that Appellant cannot establish prejudice to succeed on his ineffectiveness claims.[10] (*See* PCRA Order and Opinion at 8). *See also Chambers, supra*. Accordingly, we affirm.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/08/2021

---

[10] Based on our disposition that the entry into the third-party residence was lawful, we need not address whether there were also exigent circumstances to excuse an otherwise unlawful entry.