J-S21003-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ISIAH WYATTE | : | |
| | : | |
| Appellant | : | No. 1599 EDA 2023 |

Appeal from the Judgment of Sentence Entered June 7, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0000818-2021

BEFORE:  LAZARUS, P.J., NICHOLS, J., and MURRAY, J.

MEMORANDUM BY LAZARUS, P.J.:                **FILED SEPTEMBER 27, 2024**

Isiah Wyatte appeals from the judgment of sentence, entered in the Court of Common Pleas of Philadelphia County, following his convictions, after a non-jury trial, of possession with intent to deliver,[1] intentional possession of a controlled substance by a person not registered,[2] possession of a firearm prohibited,[3] and possessing an instrument of crime with intent to employ it criminally.[4]  After careful review, we reverse the denial of suppression, vacate

_____

[1] 35 P.S. § 780-113(a)(30).

[2] *Id.* at § 780-113(a)(16).

[3] 18 Pa.C.S.A. § 6105(a)(1).

[4] *Id.* at § 907(a).

Wyatte's convictions, and remand for proceedings consistent with this decision.

On August 18, 2020, members of the United States Marshals' Violent Fugitive Task Force arrived at 5604 Catharine Street, in Philadelphia, a basement apartment, based upon information that Wyatte was residing there.[5] Wyatte was the subject of an active arrest warrant stemming from a shooting at 1631 S. 18th Street in Philadelphia on May 14, 2020.[6] *See* Affidavit of Probable Cause, 8/18/20. After setting up surveillance at 5604 Catharine Street, Special Deputy David Stevenson of the U.S. Marshals observed Wyatte exit the apartment, smoke a cigarette, and re-enter the apartment. *See* N.T. Motion Volume 1, 3/15/22, at 11-12. Pursuant to U.S. Marshal policy, the Violent Fugitive Task Force deliberately waited until Wyatte re-entered 5604 Catharine Street to set up a secure perimeter of the property. *Id.* at 13.

After knocking on the door and receiving no response, U.S. Marshals breached the residence without a search warrant. Shortly thereafter, Wyatte was arrested in the house and brought outside. *See* Trial Court Opinion,

_____

[5] It is unclear, from the record before us, what information law enforcement relied upon in concluding that Wyatte could be found at the Catharine Street address.

[6] This shooting was captured on surveillance video and, as relevant to the facts of this case, depicted a white sedan pull up next to another, unidentified vehicle. Gunshots were fired from inside of the white sedan at the other vehicle. Additionally, law enforcement observed a "carabine[]r with keys [] in the shooting incident video." Affidavit of Probable Cause, 8/18/20.

9/21/23, at 4. During the arrest, law enforcement conducted a protective sweep, but did not locate any other people with guns, or see any firearms, drugs, or other evidence in plain view. *See id.*[7]

Detective Charles Courtney of the South Detective Division of the Philadelphia Police Department was the assigned detective for the shooting on May 14, 2020. After learning that Wyatte was arrested at 5604 Catharine Street, detectives prepared a search warrant for the address in their search for the firearm and other physical evidence connected to the 1631 S. 18th Street shooting. *See* N.T. Suppression Hearing, 3/15/22, at 34-35; *see also* Affidavit of Probable Cause for Search and Seizure Warrant, 8/18/20. On August 18, 2020, detectives obtained the search warrant, which contained the following information:

> On 5/14/2020 at approximately 2:44 [P.M.], police responded to a report of a shooting [at] 1631 S[outh] 18[th] Street[, in] Philadelphia[]. Police located [C]omplainant #1 on the highway suffering from gunshot wounds to the buttocks. Complainant #1 was transported to [Penn] Presbyterian [Medical Center] and listed in stable condition. Complainant [#1] was unable to be interviewed at this time due to the fact he was in surgery. Complainant #2 was not injured and [was] transported to [South Detectives Division] to be interviewed. Complainant #2 stated she was sitting in [C]omplainant #1's parked vehicle in the passenger seat talking to [C]omplainant #1. A white sedan then pulled up beside the vehicle they were sitting in, the male in the

_____

[7] *See* N.T. Motion Volume 1, 3/15/2022, at 18-19. *See also Commonwealth v. Taylor*, 771 A.2d 1261, 1267 (Pa. 2001) ("[a] protective sweep is 'a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others.'") (quoting *Maryland v. Buie*, 494 U.S. 325, 327 (1990)).

passenger seat stated "what's up fam" and then began shooting at them and sped off.

Witness #1 stated while she was walking her dog, she heard approximately 5 gunshots and then observed a 4[-]door white sedan with tinted windows speed past her at a high rate of speed. Video depicts a white four-door sedan with dark tinted windows pulling up next to [] [C]omplainant[] [#1's] vehicle. Complainant[] [#1's] vehicle [was] transported to police garage pending a search warrant.

[] Wyatte [] was developed and identified [as a suspect]. Arrest [w]arrant [#]00004552-2020 was obtained for Wyatte's arrest.

On 8[/]8[/][]20 at 9:28 [A.M.,] members of the United States Marshals['] Gun taskforce[,] along with [members of the] South Detectives Division warrant unit[,] observed [Wyatte] exit [the] basement apartment of 5604 Catharine Street[,] Philadelphia[]. The officers took the door and arrested Wyatte for [an] active [a]ggravated [s]hooting warrant #00004552-2020.

Based upon the above listed facts and circumstances, the [a]ffiant requests that a [s]earch and [s]eizure warrant be issued for 5604 Catharine Street[,] [] to recover firearms, firearm accessories, ammunition and a carabine[]r with keys seen in the shooting video[,] [p]roof of residence, and any other items of evidentiary value.

Affidavit of Probable Cause, 8/18/20.

Upon executing the search warrant, law enforcement found a loaded firearm underneath the bedroom mattress, a carabiner with three keys—similar to the one seen in the video of the shooting—on a bureau, a yellow bag containing 843 packets of fentanyl sticking out from a hole in the bedroom wall, and a veterinary bill addressed to Wyatte on a kitchen table. *See* N.T. Suppression Hearing, 3/15/2020, 35-36.

Following his arrest on August 18, 2020, the Commonwealth charged Wyatte with the above-mentioned offenses. Additionally, the Commonwealth

charged Wyatte with attempted murder at two separate dockets, CP-51-0000814-2021 (Docket No. 814-2021) and CP-51-CR-0000816-2021 (Docket No. 816-2021).[8]

On March 2, 2022, Wyatte filed a motion to suppress physical evidence,[9] challenging his arrest, the search of the Catharine Street apartment, and the seizure of evidence therefrom. **See** Motion to Suppress, 3/2/22, at 1. Specifically, Wyatte argued that law enforcement was required to obtain both an arrest warrant and a search warrant before entering 5604 Catharine Street, and that because the U.S. Marshals did not have a search warrant when they entered the apartment to arrest Wyatte, any evidence obtained pursuant to the search warrant should be suppressed. **See id.** at 2-4. Wyatte also argued that the search warrant was invalid and stale because it did not establish sufficient probable cause where there was no indication that any item of evidentiary value would be discovered in the residence, especially because more than three months had passed between the shooting and Wyatte's arrest. **See id.**

On March 15 and 16, 2022, the suppression court conducted a hearing, after which the court denied Wyatte's motion to suppress. Relevantly, the

---

[8] Docket Nos. 814-2021 and 816-2021 were consolidated for a jury trial and Wyatte was tried separately on the instant docket.

[9] The certified record reflects that Wyatte's motion to suppress was time-stamped by the criminal motions court on March 2, 2022. However, our review of the record reveals that the motion was never docketed. The order denying the motion, nevertheless, was docketed on March 16, 2022.

suppression court found that the U.S. Marshals' initial entry into 5604 Catharine Street to arrest Wyatte was unlawful because law enforcement entered without a search warrant. *See* N.T. Motion Volume 2, 3/16/22, at 4. Nonetheless, the court denied Wyatte's motion to suppress physical evidence, finding that the search warrant was based on an independent source, and not a product of the unlawful entry (the entry to arrest Wyatte), during which no evidence was recovered.[10] *See id.* The court also found that the search warrant was not stale. *Id.* at 3.

On November 3, 2022, a jury acquitted Wyatte of both counts of attempted murder at Docket Nos. 814-2021 and 816-2021. At the instant docket, Wyatte proceeded to a bench trial on March 29, 2023, and the trial court convicted Wyatte of the above-mentioned charges. The trial court deferred sentencing and, on June 7, 2023, sentenced Wyatte to an aggregate term of 7 to 14 years' imprisonment.

Wyatte filed a timely notice of appeal, and both Wyatte and the trial court have complied with Pa.R.A.P. 1925. On appeal, Wyatte raises the following issue for our review: "Did the [trial] court err when denying the motion to suppress physical evidence?" Brief for Appellant, at 3.

_____

[10] "The [p]robable [c]ause for the [s]earch [w]arrant indicates that Fugitive Task Force officers saw [Wyatte] exit the location of 5604 Cath[a]rine Street and includes the probable cause related to the crimes giving rise to the [a]rrest [w]arrant. The [p]robable [c]ause also seeks to recover items related to that shooting. Law enforcement entered the property, arrested [Wyatte] and secured the premises for the execution of the search warrant. This [p]robable cause is independent of the initial conduct of the police in entering the property illegally." Trial Court Opinion, 9/21/23, at 8.

This Court's standard of review of the denial of a suppression motion is well-established. The appellate courts are "limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." *Commonwealth v. Shaffer*, 209 A.3d 957, 968-69 (Pa. 2019) (internal citations omitted). Our scope of review is limited to "only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the suppression record as a whole." *Id.* at 969. It is also "within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given to their testimony." *Commonwealth v. Gallagher*, 896 A.2d 583, 585 (Pa. Super. 2006) (citation omitted). We review questions of law *de novo*. *See Commonwealth v. Yandamuri*, 159 A.3d 503, 516 (Pa. 2017).

On appeal, Wyatte raises two distinct sub-issues challenging the search warrant, which we address separately. In his first sub-issue, Wyatte argues that his motion to suppress should have been granted because law enforcement failed to obtain a search warrant for 5604 Catharine Street before arresting Wyatte within the residence. *See* Brief for Appellant, at 8. Wyatte argues that our Supreme Court's decision in *Commonwealth v. Romero*, 183 A.3d 364 (Pa. 2018) (plurality), requires both an arrest warrant and a search warrant to effectuate an arrest of someone in the home of a third-party who is not named in the arrest warrant. Wyatte contends that law enforcement arrested Wyatte in his girlfriend's residence without first

obtaining a search warrant for 5604 Catharine Street and there were no exigent circumstances justifying warrantless entry into the Catharine Street address. *See* Brief for Appellant, at 10. Consequently, Wyatte asserts the subsequent search warrant and seized evidence were "fruit of the poisonous tree" and should have been suppressed.[11] *Id.*

In general, both the Fourth Amendment of the United States Constitution, and Article 1, Section 8, of the Pennsylvania Constitution protect individuals from unreasonable government searches and seizures. *See Commonwealth v. Duke*, 208 A.3d 465, 470 (Pa. Super. 2019) (citations and quotations omitted). These provisions accomplish "the safeguarding of privacy and the fundamental requirement that warrants shall only be issued upon probable cause." *Commonwealth v. Edmunds*, 586 A.2d 887, 899 (Pa. 1991).

"It is well[-]settled that absent exigent circumstances, an arrest warrant supported by probable cause is required to arrest an individual in [the individual's] home." *Commonwealth v. Carter*, 643 A.2d 61, 68 (Pa. 1994) (citing *Payton v. New York*, 445 U.S. 573 (1980)); *see also Payton*, 445 U.S. at 603 ("[A]n arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling **in which the suspect lives** when there is reason to believe the suspect is within.") (emphasis added). To

---

[11] "The 'fruit of the poisonous tree' doctrine prohibits the admission of evidence at trial that was tainted by unconstitutional actions by law enforcement officials." *Commonwealth v. Santiago*, 209 A.3d 912, 914 (Pa. 2019).

protect a third party's privacy interests against unreasonable intrusions, law enforcement must acquire a search warrant as well as an arrest warrant. **See Romero**, **supra** ("[w]ith regard to any third party's privacy interest in the targeted space, the arrest warrant, standing alone, fails to satisfy the mandate of the warrant requirement").

However, a suspect arrested within a third-party residence has no privacy interest in the third-party's home; a suspect's privacy interests are not implicated if the suspect is arrested within a third-party residence pursuant to an arrest warrant, and not also a search warrant. **See Commonwealth v. Stanley**, 446 A.2d 583, 587 (Pa. 1982) ("If an arrest warrant and **'reason to believe' that a suspect can be found on the premises** are sufficient for police to invade a suspect's own home, then these facts are sufficient to invade a third party's premises, where a suspect's expectation of privacy is necessarily less.") (emphasis added); **see also Commonwealth v. Mullen**, 267 A.3d 507, 517 (Pa. Super. 2021) ("it would be anomalous to provide [a]ppellant more rights in a third-party residence than he would have in his own home").[12]

_____

[12] In **Mullen**, police had a valid **arrest** warrant for the defendant, a parolee. **Mullen**, 267 A.3d at 516. Police received an anonymous tip that the defendant was at 408 Anthony Street in Williamsport. **Id.** Upon arrival at 408 Anthony Street, police observed the defendant through one of the windows. **Id.** The police also spoke with a resident at the front door of the home, who confirmed that the defendant was inside. **Id.** at 517. Based upon law enforcement's observation and the conversation with the resident, this Court concluded that the police had reasonable belief that the defendant was
*(Footnote Continued Next Page)*

After reviewing the foregoing case law, we conclude that Wyatte was the subject of a valid arrest warrant and that law enforcement did not require a search warrant to enter the Catharine Street residence and execute that arrest warrant.[13]  Importantly, law enforcement had information that Wyatte was staying at the 5604 Catharine Street residence and began surveillance of the address.   After observing 5604 Catharine Street for some time, law

_____

in the residence.  **See id.** at 516-17.  Thus, law enforcement's arrest warrant and reason to believe the defendant could be found within the premises "were all that [law enforcement] needed to enter the third-party residence for purposes of protecting [the defendant's] Fourth Amendment rights."  **Id.** at 516.

[13] In the instant case, the suppression court found that law enforcement lacked authority to enter 5604 Catharine Street without a search warrant. **See** N.T. Motion Volume 2, 3/16/22, at 2-4.  Nevertheless, the trial court dismissed Wyatte's motion to suppress evidence, concluding the search warrant was based on a source independent from the initial, unlawful entry. **See id.**; **see also Commonwealth v. Burton**, 234 A.3d 824, 834 (Pa. Super. 2020) ("Under the [independent source doctrine], evidence tainted by illegal police conduct (such as an unlawful seizure) nevertheless may be admitted into evidence if the evidence can be fairly regarded as having an origin independent of the unlawful conduct.") (citations omitted).  We hold that law enforcement's initial entry into 5604 Catharine Street was not unlawful because a search warrant was not required to enter 5604 Catharine Street to effectuate Wyatte's arrest.

Based upon our review of the record, the independent source doctrine is inapplicable to the instant case.  First, there is no unlawful police conduct regarding the entry to the Catharine Street residence.  Second, there is nothing in the record that suggests police uncovered any evidence independently.  Law enforcement had reason to believe Wyatte was in the home, but did not possess any reasonable belief, as we discuss **infra**, that there was any contraband in the home.  Moreover, the above-described protective sweep did not reveal any contraband in plain view that may have amounted to an independent source.  Accordingly, we conclude that the independent source doctrine is inapplicable.

enforcement identified Wyatte as he exited the residence to smoke a cigarette before re-entering the premises. *See* N.T. Motion Volume 1, 3/15/2022, at 11-12. Law enforcement, thus, had a reason to believe that Wyatte was in the residence. This reason to believe Wyatte was present, coupled with the arrest warrant, was sufficient to arrest Wyatte in 5604 Catharine Street without violating his Fourth Amendment rights. *See Stanley*, 446 A.2d at 587; *Mullen*, 267 A.3d at 516-517 (applying *Romero* and concluding police possessed valid arrest warrant and reasonable belief necessary to enter third-party residence to arrest defendant). *See also Commonwealth v. Demery*, 2024 WL 1989034 at *10 (Pa. Super. 2024) [14] (rejecting appellant's reliance on *Romero* when appellant was arrested in a third-party's residence because "police possessed the arrest warrant and reasonable belief necessary to lawfully enter the [third party's] apartment").[15]

---

[14] *See* Pa.R.A.P. 126(a)-(b) (unpublished, non-precedential opinions of this Court filed after May 1, 2019, may be cited for persuasive value).

[15] In *Demery*, law enforcement was conducting surveillance at a housing complex when they noticed Steven McQueen exit a vehicle, enter apartment 9G, and exit the apartment looking nervous and clutching something in front of his body. *See Demery*, 2024 WL 1989034, at *2. After performing a traffic stop on the vehicle for parking illegally in a handicap space, McQueen admitted to law enforcement that marijuana was in the vehicle, and that Robert Demery was in apartment 9G. *See id.* Law enforcement then learned that Demery had an active felony arrest warrant related to drug and firearms offenses. *See id.* Law enforcement eventually breached and arrested Demery inside the apartment, the leaseholder of which was Demery's paramour. *See id* at *3. This Court dismissed Demery's *Romero* argument, concluding that law enforcement had sufficient reasonable belief to enter the third-party
*(Footnote Continued Next Page)*

In conclusion, Wyatte's case is not analogous to **Romero**,[16] but rather more aligned with the facts presented in **Mullen** and **Demery**. Consequently, we reject Wyatte's **Romero** claim, and conclude that law enforcement was not required to obtain a search warrant prior to arresting Wyatte in the Catharine Street apartment. **See Romero**, **supra**; **Mullen**, **supra**.

In his second sub-issue, Wyatte argues that the search warrant failed to establish probable cause to search 5604 Catharine Street, as it did not state a nexus between the alleged criminal activity and the residence. **See** Brief for Appellant, at 13. Further, Wyatte contends that because more than three months elapsed between the shooting and the search of the property, the

_____

apartment since McQueen had just informed law enforcement Demery was inside. **Id.** at *10.

[16] In **Romero**, a warrant was issued for a parolee's arrest. **See Romero**, 183 A.3d at 372. The parole agent executed the warrant at the home of defendants, third parties unconnected to the parolee's offense. Although the parolee was not present in the residence, law enforcement searched the property and found a suspected marijuana-growing operation. **Id.** The residents of the home were subsequently arrested and charged with numerous drug offenses. **See id.** The trial court granted the suppression motion filed by the home's residents. On appeal, this Court reversed. On allowance of appeal, our Supreme Court concluded that this Court erred in reversing the suppression court's order. **See id.** at 377. Specifically, our Supreme Court held that "[w]ith regard to any third party's privacy interest in the targeted space, the arrest warrant, standing alone, fails to satisfy the mandate of the warrant requirement." **Id.** at 397. The Court further held that "a search warrant reflecting a magisterial determination of probable cause is required" to protect a third party's privacy interests in their own home. **Id.** at 395. The Court repeatedly made clear that this holding only implicated the rights of third parties, not those of an arrestee. **Id.** at 380 n. 6, 395, 397, 399, 404 n. 21.

affidavit of probable cause was stale insofar as it failed to show that any articles of evidentiary value might be stored at the Catharine Street address. **See id.**

A search or seizure is unreasonable unless executed pursuant to a search warrant issued by a neutral magistrate upon a determination of probable cause. **See Commonwealth v. Blasioli**, 685 A.2d 151, 159 (Pa. Super. 1996); **Duke**, **supra**. The determination of probable cause is made by considering the totality of the circumstances, which requires the issuing authority "to make a practical, common-sense decision whether, given all of the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." **Commonwealth v. Johnson**, 42 A.3d 1017, 1031 (Pa. 2012) (internal quotations omitted).

It is well-established that probable cause must be closely related to the facts and time at which the search warrant is issued. **See Commonwealth v. Janda**, 14 A.3d 147, 158-59 (Pa. Super. 2011). "If, however, it is demonstrated that criminal conduct has[,] in fact[,] continued, then the relevant information, in spite of its vintage, may not be deemed stale." **Commonwealth v. Eazer**, 312 A.2d 398, 399 (Pa. 1973). **See also Commonwealth v. Hagen**, 368 A.2d 318, 322 (Pa. Super. 1976) (concluding information at least one month old, without continuing criminal conduct, was stale); **Eazer**, 312 A.2d at 400 (61-days old information stale absent evidence of continuing criminal activity); **Commonwealth v. Suppa**, 302 A.2d 357,

358-59 (Pa. Super. 1973) (16-days old information stale when affidavit of probable cause offered unsupported assertions appellant's use of residence was to further criminal activity).

However, elapsed time alone is not dispositive. This Court has explained:

> [a]ge of information supporting a warrant application **is a factor** in determining probable cause. . . . The determination of probable cause is not merely an exercise in counting the days or even months between the facts relied on and the issuance of the warrant. Rather, we must also examine the nature of the crime and the type of evidence.

*Commonwealth v. Gomolekoff*, 910 A.2d 710, 713 (Pa. Super. 2006) (citation and quotation marks omitted; emphasis added). *See also Commonwealth v. Klimkowicz*, 479 A.2d 1086, 1089 (Pa. Super. 1986) ("The issuing magistrate must consider the nature and quantity of items to be seized, the time lapse involved, and the ease with which items may be disposed.").

The reviewing court must then determine whether the issuing authority had a substantial basis for concluding probable cause existed. *See Commonwealth v. Sherwood*, 982 A.2d 483, 503 (Pa. 2009). This Court, therefore, "must accord deference to the issuing authority's probable cause determination[] and must view the information offered to establish probable cause in a common-sense, non-technical manner." *Commonwealth v. Jones*, 764 A.2d 532, 539 (Pa. 2001).

To establish probable cause, our Supreme Court provided the following instruction:

> Neither the Fourth Amendment nor Article I, Section 8 of the Pennsylvania Constitution explicitly requires individualized suspicion. Nonetheless, although not an "irreducible" component of reasonableness, the general rule is that probable cause must be predicated upon individualized suspicion, and that searches conducted without such suspicion ordinarily are deemed unreasonable.

*Commonwealth v. Jacoby*, 170 A.3d 1065, 1084 (Pa. 2017). Further, "[t]he architects of our Constitutions rejected general searches, and instead charged police officers with demonstrating specific and articulable facts to establish probable cause that a particular person committed a particular crime[,] and that evidence of that crime would be found in a particular place." *Id.* at 1085.

In *Jacoby*, our Supreme Court considered whether probable cause existed to authorize a search warrant for the home of the defendant, who was the suspect in a murder committed 15 months prior. The *Jacoby* court first held the affidavit contained sufficient probable cause to believe defendant was the actor who committed the murder. Our Supreme Court then focused on the search warrant procured to search defendant's home. The affiant to the search warrant asserted that "it was 'reasonable' to believe the murder weapon was secreted in [defendant's] house" 15 months after the murder because defendant's felon status barred him from lawfully acquiring another firearm. *Id.* at 1083. The trial court found that the information supporting probable cause was not stale for two reasons: first, because "guns are durable

and sometimes valuable objects that people typically hold on to for the long term" and, second, defendant's felon status increased the likelihood that he would retain a firearm he already possessed. *Id.* at 1083-84. Our Supreme Court determined the affiant's statement was "conjecture and speculation, particularly considering the gap in time [between the murder and issuance of the search warrant], and cannot suffice as probable cause on this point." *Id.* at 1083. Our Supreme Court then held that the trial court "reached similarly speculative conclusions." *Id.* Our Supreme Court concluded that the trial court's opinion, like the affidavit of probable cause, relied on generalized statements about what unknown people under undefined circumstances typically do.

Ultimately, the Court in *Jacoby* held that:

[p]robable cause to search [defendant's] home did not exist simply because probable cause existed to believe that he had committed the murder, with a weapon of the same caliber as one that [defendant] owned, and then drove in the general direction of [defendant's] home fifteen months before the search warrant was issued. Together and by themselves, these factors do not justify entry without some nexus to the home. The trial court overlooked the significant gap of time between the murder and the search, and then attempted to buttress its conclusion with an unsourced assessment of general human behavior. Without support, the trial court reasoned that people—felons especially—generally do not discard firearms, even those used in murders.

*Id.*

Instantly, guided by the *Jacoby* Court, our review of the record reveals the trial court did not have a legal basis to determine probable cause existed because the instant affidavit of probable cause failed to establish a substantial

- 16 -

nexus between 5604 Catharine Street and the shooting incident of which Wyatte was suspected.

Upon review, we note that the affidavit of probable cause fails to tie any of the sought after items to 5604 Catharine Street. The warrant does not include a description of the firearm seen in the shooting video or a description of the "firearms" law enforcement sought with the search warrant. It also does not include any information connecting Wyatte to the firearm seen in the shooting video, let alone any firearm. There is no indication that, if Wyatte was in possession a firearm, he would have retained the firearm three months after the shooting incident. In fact, the affidavit does not include any specific facts that Wyatte was the actor in the shooting from May 14, 2020. **See Jacoby**, **supra**. In all, the affidavit failed to establish probable cause that the weapon seen in the original shooting video would be found in 5604 Catharine Street three months after the shooting. **See Hagen**, **supra** ("[i]t is the *criminal activity* which must continue up to or about the time of the warrant, not the investigation.") (emphasis in original).

Additionally, the trial court, much like the trial court in **Jacoby**, baldly determined that "[t]he firearm used [in a crime] is also not easily 'transferable' and has obvious use to a person who is the subject of an arrest warrant and being searched for by the United States Marshal[]'s Gun Violence Task Force." Trial Court Opinion, 9/21/23, at 10. The trial court further stated that "[i]t is reasonable to believe that **a person** . . . would continue to possess their firearm a few months after the alleged attempted murder for which he

- 17 -

is wanted." *Id.* (emphasis added). The trial court erred by relying on "generalized statements about what unknown people under undefined circumstances typically do" and by not individualizing probable cause to the circumstances of Wyatte's case. *See Jacoby*, *supra*. Instead, it relied on the assumption that "a person" would retain a firearm used in the commission of a crime for several months after the crime. This overbroad generalization is insufficient to support a finding of probable cause. *See id.* While we must afford deference and view the warrant in a common-sense manner, there is nothing in the search warrant to indicate that **Wyatte had retained the alleged firearm and that it would be stored at 5604 Catharine Street**. While in *Jacoby* our Supreme Court held that the probable cause supporting the search warrant "failed" to manifest "suspicion individualized to the time and place of the search," it nonetheless held that the trial court's probable cause error was harmless.[17] *See Jacoby*, 170 A.3d at 1084-85. Here, in contrast, Wyatte was convicted of drugs and firearms offenses stemming from the search and seizure of 5604 Catharine Street. We hold the search warrant was constitutionally invalid; thus, evidence sized from 5604 Catharine Street should have been suppressed. The use of unlawfully seized evidence to convict Wyatte therefore was not harmless error. Accordingly, we reverse the trial court's denial of suppression.

---

[17] "An error is harmless if it could not have contributed to the verdict. In other words, an error cannot be harmless if there is a reasonable possibility the error might have contributed to the conviction." *Commonwealth v. Wright*, 961 A.2d 119, 143 (Pa. 2008).

As we have concluded the search warrant to be invalid and unsupported by probable cause, the logical conclusion is that the resulting evidence was seized unlawfully as fruit of the poisonous tree. *See Santiago*, *supra*. As such, all of the evidence seized as a result of the above-described search warrant must be suppressed. Accordingly, we reverse the trial court's denial of suppression, vacate Wyatte's judgment of sentence, and remand for proceedings consistent with this memorandum.

Order reversed. Judgment of sentence vacated. Case remanded. Jurisdiction relinquished.

Murray, J., Joins this Memorandum.

Nichols, J., Concurs in the result.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 9/27/2024