J-S20029-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                                         :               PENNSYLVANIA
                                         :

                 v.                           :
                                         :

RONALD KENT                          :
                                       :

             Appellant               :       No. 230 MDA 2024

Appeal from the Judgment of Sentence Entered August 30, 2023
In the Court of Common Pleas of Luzerne County Criminal Division at
No(s): CP-40-CR-0001215-2020

BEFORE: OLSON, J., LANE, J., and BENDER, P.J.E.

MEMORANDUM BY LANE, J.:            **FILED: AUGUST 11, 2025**

Ronald Kent ("Kent") appeals from the judgment of sentence imposed following his conviction for persons not to possess firearms.[1] After review, we affirm.

In February 2020, Kingston Police officers responded to a report of a shooting in the vicinity of Reese Park in Kingston Borough, Luzerne County. Upon arrival, officers located two individuals, Charles Bierly ("Bierly") and Kevin James ("James"). Bierly sustained a gunshot wound to the leg. During the investigation, officers recovered a 9-millimeter shell casing and a 9-millimeter bullet at the scene. Police also collected video surveillance footage from various businesses and residences around Reese Park. Officers reviewed surveillance footage showing: three men entering the park; the men briefly

---

[1] *See* 18 Pa.C.S.A. § 6105.

meeting in an alleyway before two of them ran away, chased by the third man; and the third man firing a gun, producing a muzzle flash. Based on the surveillance video and witness interviews, investigators ultimately identified Kent as the shooter. **See** Police Criminal Complaint, Affidavit of Probable Cause, 3/6/20, at 1-3.

Following the February 2020 shooting incident, police continued their investigation. Detective John Anthony ("Detective Anthony") who responded to the scene of the shooting, later recovered a 9-millimeter handgun found in a front yard of a residence near the park and submitted it, along with other physical evidence, for forensic testing. **See** N.T. (Suppression Hearing), 11/2/22, at 30–31. Detective Anthony also obtained Kent's recorded prison phone calls in which he admitted to shooting a man in the park. **See id**. at 32-33.

During a police interview, Kent admitted to being involved in a confrontation with two males in Reese Park on the day of the shooting. **See id**. at 38. Thereafter, in October 2021, Detective Anthony obtained a search warrant to seize a buccal swab of Kent's DNA. **See** N.T., 11/2/22, at 31; **see also** N.T. (Jury Trial), 6/21/23, at 38. The DNA sample taken from Kent for comparison purposes confirmed that the DNA recovered from the gun matched Kent's DNA. **See id**. Furthermore, forensic analysts determined the 9-millimeter handgun later recovered by police discharged the 9-millimeter shell casing found at the scene. **See id**.

Detective Anthony obtained an arrest warrant for Kent based upon information that he was residing at an address in Wilkes Barre. *See* Police Criminal Complaint, Affidavit of Probable Cause, 3/6/20; *see also* N.T. (Suppression Hearing), 11/2/22, at 31, 34. The United States Marshals Service executed the warrant and arrested Kent at his father's residence in Wilkes Barre. *See* N.T., 11/2/22, at 32. Police charged Kent with aggravated assault, persons not to possess firearms, carrying a firearm without a license, and two counts of recklessly endangering another person.

In early 2022, Kent filed a *pro se*[2] omnibus pretrial motion seeking to suppress, *inter alia*: (1) "[i]llegally [o]btained [e]vidence[;]" and (2) his arrest. Kent's Omnibus Pretrial Motion for Suppression, 2/7/22, at 1-11. At the suppression hearing on November 2, 2022, Detective Anthony testified to the above facts that established the investigative steps leading to Kent's identification and arrest, including the video surveillance, witness interviews, recorded prison phone calls, and forensic evidence. Kent appeared *pro se* at the hearing and did not present any evidence or testimony on his own behalf.

---

[2] Beginning August 2020, court-appointed counsel represented Kent in the matter. Subsequently, in December 2020, September 2021, October 2021 and November 2021, Kent filed several *pro se* motions requesting to waive counsel and to represent himself. The record does not reflect whether the trial court conducted a hearing pursuant to ***Commonwealth v. Grazier***, 713 A.2d 81 (Pa. 1998). However, in December 2021, the trial court entered an order stating that court-appointed counsel was to remain as standby counsel.

At the conclusion of the hearing, Kent argued that the trial court should suppress: (1) his arrest, asserting that "[f]or the police to enter a third person's home or a third party's home, they would need a search warrant[;]" and (2) the search warrant obtained for his DNA sample. N.T., 11/2/22, at 43-49. The trial court clarified that Kent was specifically challenging the legality of his arrest at his father's home and the subsequent collection of his DNA sample. *See id*. at 52-53. Following the hearing, the trial court entered an order denying Kent's motion to suppress. In its accompanying findings of fact and conclusions of law, the trial court found Detective Anthony's testimony was credible. The trial court further concluded that: (1) Kent's arrest at his father's house was lawful; and (2) "[s]ufficient probable cause existed to support the search warrant" to collect his DNA sample. Findings of Fact and Conclusions of Law, 1/9/23, at unnumbered 5; *see also* Trial Court Opinion, 7/2/25, at 7.

The matter then proceeded to a jury trial. Kent indicated that he wanted to waive counsel before proceeding with trial. Following a colloquy pursuant to *Grazier*, the trial court permitted him to proceed with standby counsel. The trial court summarized the trial proceedings as follows:

> The Commonwealth chose to pursue one charge at trial which was possession of firearm prohibited. [In addition to the above testimony from Detective Anthony, the Commonwealth presented t]hirteen witnesses[ — including the expert testimony of Seargent Charles Fino, Hai Sheng Li ("Dr. Li"), and Maiko Suzuki Ferro —] and forty-four exhibits . . . at trial. . . .

* * * *

- 4 -

. . . The Commonwealth also presented evidence which established that Kent entered a guilty plea to possession with intent to deliver a controlled substance in 2007.  [Kent did not testify at trial on his own behalf but presented Detective Anthony as a witness.]

Trial Court Opinion, 7/2/25, at 1-3.[3]

At the conclusion of trial, the jury convicted Kent of persons not to possess firearms.  On August 30, 2023, the trial court sentenced Kent to five to ten years' incarceration.  Kent filed a timely *pro se* post-sentence motion,[4] which the trial court denied on January 4, 2024.  On January 25, 2024, Kent filed a notice of appeal.[5]

_____

[3] For ease of review, when quoting the trial court's opinion, we have changed the trial court's references of the "Defendant" to "Kent."

[4] Procedurally, after the trial court imposed judgment of sentence on August 30, 2023, Kent filed a *pro se* post-sentence motion on September 13, 2023 — outside the ten-day deadline set by Pa.R.Crim.P. 720(A)(1).  Although Kent's motion appeared untimely on its face, he asserted in a *pro se* response to this Court's rule to show cause that he timely delivered the motion to prison authorities on September 8, 2023, in accordance with the prisoner mailbox rule.  **See** Pa.R.A.P. 121(f) (providing that "A *pro se* filing submitted by a person incarcerated in a correctional facility is deemed filed as of the date of the prison postmark or the date the filing was delivered to the prison authorities for purposes of mailing as documented by a properly executed prisoner cash slip or other reasonably verifiable evidence").  Here, the certified record reflects that, on September 8, 2023, Kent delivered his post-sentence motion to prison authorities.  Therefore, we treat Kent's post-sentence motion as timely.

[5] The trial court docket entry for the January 4, 2024 order denying Kent's post-sentence motion indicates that the court served Kent with the order in accordance with Pa.R.Crim.P. 114(B)(1).  Although the prothonotary did not docket Kent's *pro se* notice of appeal until February 12, 2024 — thirty-nine days after the order was entered — the certified record establishes that Kent

*(Footnote Continued Next Page)*

While the appeal was pending, this Court directed the trial court to determine whether Kent's ongoing waiver of counsel was knowing, intelligent, and voluntary. The trial court conducted a **Grazier** hearing and appointed counsel to represent Kent in connection with this appeal. Counsel entered his appearance in this matter and thereafter requested leave to file a concise statement *nunc pro tunc* pursuant to Pa.R.A.P. 1925(b). The trial court granted Kent leave to file a concise statement *nunc pro tunc*, and both he and the trial court complied with Rule 1925.

Kent raises the following issues for our review:

1. Whether the [trial] court erred in denying [Kent's] post-sentence motion, (wherein he renewed his pre-trial challenge to arrest, as well as admission of evidence obtained following his arrest, as unlawful).

2. Whether the [trial] court erred in denying [Kent's] post-sentence motion where there was a lack of sufficient evidence presented at trial to prove every element of the crimes charged beyond a reasonable doubt.

3. Whether the [trial] court erred in denying [Kent's] post-sentence motion where the verdict of guilty of the crime charged following trial was against the weight of the evidence.

Kent's Brief at 3.

---

delivered the notice to prison authorities on January 25, 2024. **See** *Pa.R.A.P. 121(f).* Accordingly, because Kent delivered his notice of appeal within the thirty-day appeal period, we treat the appeal as timely filed pursuant to the prisoner mailbox rule.

In his first issue, Kent challenges the denial of his suppression motion.[6] Our standard of review for the denial of a suppression motion is well-settled:

> Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. The suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review. Moreover, appellate courts are limited to reviewing only the evidence presented at the suppression hearing when examining a ruling on a pre-trial motion to suppress.

*Commonwealth v. Carey*, 249 A.3d 1217, 1223 (Pa. Super. 2021).

In general, both the Fourth Amendment of the United States Constitution, and Article 1, Section 8, of the Pennsylvania Constitution protect individuals from unreasonable government searches and seizures. *See Commonwealth v. Duke*, 208 A.3d 465, 470 (Pa. Super. 2019). To be reasonable, these provisions serve to "safeguard . . . privacy and the fundamental requirement that [seizures and arrests occur only] upon probable cause." *Commonwealth v. Edmunds*, 586 A.2d 887, 899 (Pa. 1991).

---

[6] Although Kent frames this issue as a challenge to the denial of his post-sentence motion, he actually challenges the trial court's underlying suppression ruling.

This Court has recognized that,

> [a] warrantless search or seizure is presumptively unreasonable under the Fourth Amendment and Article I, [Section] 8, subject to a few specifically established, well-delineated exceptions. These exceptions include[:] the consent exception, the plain view exception, the inventory search exception, the exigent circumstances exception, the automobile exception, . . . the stop and frisk exception, and the search incident to arrest exception.

*Commonwealth v. Smith*, 285 A.3d 328, 332 (Pa. Super. 2022) (quotation marks and citations omitted).

With respect to the location where an arrest warrant is executed, "[i]t is well[-]settled that absent exigent circumstances, an arrest warrant supported by probable cause is required to arrest an individual in [the individual's] home." *Commonwealth v. Carter*, 643 A.2d 61, 68 (Pa. 1994) (*citing* *Payton v. New York*, 445 U.S. 573 (1980)); *see also Payton*, 445 U.S. at 603 (explaining that "an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling *in which the suspect lives* when there is reason to believe the suspect is within") (emphasis added).

However, when law enforcement seeks to execute an arrest warrant in a dwelling in which the suspect does not live, law enforcement must acquire a search warrant as well as an arrest warrant to protect a third party's privacy interests against unreasonable intrusions. *See Commonwealth v. Romero*, 183 A.3d 364, 389 (Pa. 2018) (stating that "[w]ith regard to any third party's privacy interest in the targeted space, the arrest warrant, standing alone, fails

to satisfy the mandate of the warrant requirement"); *c.f. Commonwealth v. Demery*, 321 A.3d 929 (Pa. Super. 2024) (unpublished memorandum at *4) (rejecting appellant's reliance on *Romero* because "police possessed the arrest warrant and reasonable belief necessary to lawfully enter the [third party's] apartment" to arrest appellant).[7]

To challenge a search or entry, a defendant must first establish a legitimate expectation of privacy in the premises and standing to assert that constitutional protection. *See Commonwealth v. Enimpah*, 106 A.3d 695, 698 (Pa. 2014). Notably, a suspect arrested within a third-party residence has *no* privacy interest in the third-party's home because a suspect's privacy interests are not implicated if the suspect is arrested within a third-party residence solely pursuant to an arrest warrant, and not also a search warrant. *See Commonwealth v. Stanley*, 446 A.2d 583, 587 (Pa. 1982) (recognizing that "If an arrest warrant and *'reason to believe' that a suspect can be found on the premises* are sufficient for police to invade a suspect's own home, then these facts are sufficient to invade a third party's premises, where a suspect's expectation of privacy is necessarily less") (emphasis added); *see also Commonwealth v. Mullen*, 267 A.3d 507, 517 (Pa. Super. 2021) (reasoning that "it would be anomalous to provide [a]ppellant more rights in a third-party residence than he would have in his own home").

---

[7] *See* Pa.R.A.P. 126(b)(1)-(2) (providing that an unpublished non-precedential memorandum decision of the Superior Court, filed after May 1, 2019, may be cited for its persuasive value).

Kent claims that his arrest was unlawful because police failed to obtain a separate warrant to search his father's house prior to executing the warrant for his arrest. According to Kent, police did not have consent to search his father's residence. Kent further argues that no other exception to the warrant requirement applied. In advancing his argument, Kent relies solely on *Romero*. Kent summarily concludes that, because his arrest was unlawfully conducted without a search warrant, the subsequent collection of his DNA was also unlawful.[8]

Here, the trial court considered Kent's first issue and determined that it lacked merit. The trial court found that the "[t]he arrest of [Kent] by the United States Marshals Service at his father's residence in Wilkes Barre was lawful." Findings of Fact and Conclusions of Law, 1/9/23, at unnumbered 5. The trial court reasoned that: "A valid arrest warrant and 'reason to believe' that the defendant was within a premises are sufficient to permit police officers to enter a third party's residence where a defendant's expectation of privacy is less and neither a search warrant nor probable cause is necessary." *Id*. at unnumbered 5 (citation omitted).

Based on our review, we conclude that Kent was the subject of a valid arrest warrant, and that law enforcement did not require a search warrant to enter his father's residence and execute that arrest warrant. Importantly, law

---

[8] Although Kent appears to be attempting to invoke a fruit of the poisonous tree theory, he does not articulate any applicable legal standard to support suppression of the DNA evidence on this basis. Moreover, it does not appear that he developed any such theory in the suppression court.

enforcement had information that Kent was staying at an address in Wilkes Barre. The record established that the arrest occurred at Kent's father's house in Wilkes Barre. Law enforcement, thus, had a reason to believe that Kent was in the residence. This reason to believe Kent was present, coupled with the arrest warrant, was sufficient to arrest Kent inside of his father's residence without the need for a search warrant. **See Stanley**, 446 A.2d at 587; **see also Mullen**, 267 A.3d at 516-517; **Demery**, 321 A.3d 929 (unpublished memorandum at *4).

Furthermore, pursuant to **Mullen**, Kent cannot assert his father's privacy interest in the residence — a third party's interest — to his own benefit. **See Mullen**, 267 A.3d at 516. Therefore, even if a separate search warrant was required, Kent lacked standing challenge its absence. Thus, Kent's claim that his arrest was unlawful merely because police did not obtain a separate search warrant prior to executing his arrest warrant is meritless. Similarly, Kent's unsupported and conclusory assertion that the lack of a separate search warrant at the time of his arrest rendered the subsequent collection of his DNA unlawful is also meritless.[9] Accordingly, Kent's first issue warrants no relief.

---

[9] We note that Kent does not challenge the separate warrant to obtain his DNA or present any claim or argument that this subsequent warrant for his DNA was deficient in any manner.

Kent's second issue challenges the sufficiency of the evidence supporting his conviction for persons not to possess.[10] Our standard of review regarding a sufficiency of the evidence claim is well-settled:

> The standard we apply . . . is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the

---

[10] As a general rule, an appellant must preserve a challenge to the sufficiency of the evidence by specifying in a timely Rule 1925(b) concise statement the specific element or elements of each offense that allegedly went unproven at trial. **See Commonwealth v. Bonnett**, 239 A.3d 1096, 1106 (Pa. Super. 2020) (holding that in order to preserve a challenge to the sufficiency of the evidence on appeal, an appellant's Rule 1925(b) statement must state with specificity the element or elements upon which the appellant alleges that the evidence was insufficient). In his concise statement, Kent did not specify any particular element of his crime that went unproven, and instead merely claimed that the Commonwealth failed to prove "every" element of his conviction. **See** Concise Statement, 12/31/24, at unnumbered 1. On this basis, the trial court found that Kent had waived his sufficiency challenge. **See** Trial Court Opinion, 7/2/25, at 7. However, we decline to find waiver on this basis and instead address the claim on its merits.

Moreover, although Kent characterizes this issue as a challenge to the denial of his post-sentence motion, he in fact challenges the sufficiency of the evidence supporting his conviction for persons not to possess a firearm.

weight of the evidence produced, is free to believe all, part or none of the evidence.

***Commonwealth v. Edwards***, 229 A.3d 298, 305-06 (Pa. Super. 2020) (quotation and internal brackets omitted).

To sustain a conviction for persons not to possess a firearm, the Commonwealth must prove beyond a reasonable doubt that the defendant possessed a firearm and had a prior conviction for an enumerated offense that prohibited him from possessing, using, or controlling a firearm. ***See*** 18 Pa.C.S.A. § 6105(a)(1). A "firearm" is defined as any weapon that is "designed to or may readily be converted to expel any projectile by the action of an explosive or the frame or receiver of any such weapon." 18 Pa.C.S.A. § 6105(i).

Kent argues that the Commonwealth presented insufficient evidence to support his conviction for persons not to possess firearms. Kent specifically contends that the only substantive evidence tying him to the firearm was DNA evidence introduced through the Commonwealth's expert, Dr. Li, whose inconsistent testimony "rendered the evidence unreliable, inconsistent, and insufficient." Kent's Brief at 10. Kent maintains that without this testimony, there is no direct or circumstantial evidence proving that he possessed the firearm. ***See id***.

The trial court considered Kent's second issue and determined that it lacked merit. The court reasoned:

> Wilkes-Barre City Patrol Officer Daniel Duffy testified that he arrested [Kent] on February 21, 2006[,] while employed as a police officer by the City of Scranton. The arrest was for

possession with intent to deliver crack cocaine. [Kent] pled guilty and was sentenced to [eighteen] months to [six] years on March 5, 2007. Commonwealth exhibits 24, 25[,] and 26 also established [Kent's] Lackawanna County conviction [which rendered Kent ineligible to possess a firearm under 18 Pa.C.S.A. 6105(a)(1).] This offense was punishable by a term of imprisonment which may exceed two years. Video evidence of the shooting confirmed [Kent's] possession of a firearm as did his admission to possession a firearm during a prison phone call which had been taped. [Kent's] DNA was a major component of the DNA obtained from the firearm discovered in a lawn on First Avenue in Kingston two days after the shooting. [As such, m]ore than sufficient evidence was presented to sustain the Commonwealth's burden.

Trial Court Opinion, 7/5/25, at 9 (citations omitted).

Viewing the evidence in the light most favorable to the Commonwealth, we conclude that the Commonwealth presented sufficient evidence to establish every element of persons not to possess beyond a reasonable doubt. The record reflects that the Commonwealth presented evidence of Kent's prior conviction which rendered him ineligible to possess a firearm. The Commonwealth also introduced Kent's recorded admission during a prison phone call, along with video footage of the incident showing him in possession of the firearm — providing ample direct and circumstantial evidence to sustain the conviction. *See Edwards*, 229 A.3d at 305–06. Accordingly, Kent's second issue on appeal merits no relief.

In Kent's third claim, he contends that the verdict was against the weight of the evidence. However, before reaching the merits of this contention, we must determine whether Kent properly preserved the issue for appellate review.

- 14 -

In order to preserve a challenge to the weight of the evidence for purposes of appeal, the appellant must raise the claim in a post-sentence motion before the trial court. ***See*** Pa.R.Crim.P. 607(A)(1)-(3) (providing that a defendant must raise a challenge to the weight of the evidence with the trial court — either orally before sentencing or in a written pre- or post-sentence motion — to preserve the issue for appeal); ***see also Commonwealth v. Rivera***, 238 A.3d 482, 497 (Pa. Super. 2020) (*holding that failure to raise a weight of the evidence claim in a post-sentence motion results in waiver on appeal*). A claim challenging the weight of the evidence generally cannot be raised for the first time in a Rule 1925(b) statement. ***See Commonwealth v. Sherwood***, 982 A.2d 483, 494 (Pa. 2009); ***see also*** Pa.R.Crim.P. 607 (providing that "The purpose of this rule is to make it clear that a challenge to the weight of the evidence must be raised with the trial judge or it will be waived"). If an appellant challenges the verdict on the weight of the evidence in a Rule 1925(b) statement without having followed Rule 607, and the trial court addresses that issue in its Rule 1925(a) opinion, this court cannot address the merits of the weight claim. ***See Sherwood***, 982 A.2d at 494; ***see also*** Pa.R.Crim.P. 607. "An appellant's failure to avail himself of any of the prescribed methods for presenting a weight of the evidence issue to the trial court constitutes waiver of that claim." ***Commonwealth v. Weir***, 201 A.3d 163, 167 (Pa. Super. 2018).

Our review of the record reveals that Kent failed to preserve his weight-of-the-evidence claim as required under Rule 607, as he did not raise the issue

at or before sentencing, nor did he include it in his post-sentence motion. **_See_** Pa.R.Crim.P. 607(A)(1)-(2). Instead, Kent impermissibly raised his weight claim for the first time in his Rule 1925(b) statement. **_See Sherwood_**, 982 A.2d at 494. Moreover, even though the trial court addressed his weight claim in its Rule 1925(a) opinion, in the absence of a motion to the trial court, Kent did not preserve his weight claim. **_See_** Pa.R.Crim.P. 607; **_see also Weir_**, 201 A.3d at 167. Accordingly, he has waived this issue on appeal. **_See id_**.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>08/11/2025</u>