J-S15040-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
:                PENNSYLVANIA
:
v.                                    :
:
:
:
JOHN GRAZIOLI                         :
:
Appellant        :      No. 1029 WDA 2024

Appeal from the PCRA Order Entered July 19, 2024
In the Court of Common Pleas of Erie County Criminal Division at No(s):
CP-25-CR-0001341-2018

BEFORE:   OLSON, J., SULLIVAN, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY FORD ELLIOTT, P.J.E.:        **FILED: JANUARY 27, 2026**

Appellant, John Grazioli, appeals from the order entered by the Erie

County Court of Common Pleas that dismissed his petition pursuant to the

Post Conviction Relief Act (PCRA), 42 Pa.C.S. § 9541, *et seq.*  A jury found

him guilty of first-degree murder, aggravated assault, recklessly endangering

another person, possessing an instrument of crime (PIC), and carrying a

firearm without a license based on evidence that he shot his wife, Amanda

Grazioli (Wife), in the back of the head.[1]  He claims that the PCRA court erred

by denying five claims that his prior counsel provided ineffective assistance.

Upon review, we affirm.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§  2502(a), 2702(a)(1), 2705, 907(a), and 6106(a)(2),
respectively.

On direct review, the trial court summarized the evidence presented by the Commonwealth at trial, in relevant part, as follows:

Exactly one month before the murder, Appellant purchased a firearm from a local sports store. At trial, he claimed that the gun was intended as a birthday present for [Wife] due to their concern over violent crime in Erie. He also claimed that when he took the gun out of the closet at the time of the murder, his purpose in doing so was to give [it to] her [as a] birthday present.

[Wife's] birthday, however, was still a month away. … The gun was loaded, but the box of ammunition remained in his office at work. Aside from the ammunition the police found in the gun (and the bullet used to shoot [Wife]), there was ammunition missing from the box left at the office[.] … The holster for the gun also remained in his office, as did the gun's instructional manual and original plastic case.

Trial Court Opinion, 8/8/19, 6 (record citations omitted).

About ten days before the murder, [] Appellant told his ex-wife [Erica Grazioli (Ex-Wife)] that he was "getting [Wife] out of our lives" and begged her to "please, please keep this secret until I serve her…" [E]x-Wife assumed he was merely talking about serving divorce papers. No divorce papers, however, turned up during police investigation of the case. Appellant presented no evidence or witness to show that he had gone to an attorney to have such papers prepared.

Prior to his crime, Appellant made sure his children would not be present at the scene, arranging to have them stay with [E]x-Wife during the period of time when the crime would be committed.

*Id.* at 5 (record citations omitted).

Finally, the day before the murder, March 7, 2018, Appellant e-mailed [E]x-Wife and said[,] "I hope to have everything resolved by Friday [March 9, 2018]." … Instead, by the end of the next day, [Wife] was dead.

*Id.* at 6.

On March 8, 2018, at 2:16 p.m., Appellant called Ex-Wife "and clearly expressed that he had killed" Wife. Trial Court Opinion, 8/8/19, 8. Appellant also told Ex-Wife that he "had the gun with him and that he was going to kill himself." N.T. Trial, 2/5/19, 139. Ex-Wife asked her co-worker to call the police, and the Millcreek Township Police responded to Appellant's home. *See id.* at 25-26, 141. Responding police officers discovered Wife's body in her bed, covered with a blanket. *See id.* at 33. Wife sustained a gunshot to the back of her head. *See id.* at 52.

The trial court also noted:

- Not long after his conversation with [Ex-Wife], Appellant surrendered to and was arrested by the police.

- At 4:00 [p.m.], Appellant was brought into the Millcreek Police station. An officer with a significant history of dealing with drug-impaired individuals testified [that] Appellant showed no signs of intoxication when he was brought to the station. Appellant showed: (1) no slurred speech[;] (2) no impaired movement[;] (3) no illness[;] and (4) no smell of alcohol. And[,] during his interview with the police directly following, during which he showed no signs of intoxication, Appellant never claimed that killing [Wife] was an accident.

Trial Court Opinion, 8/8/19, 8-9 (record citations omitted).

With respect to a direct review claim that Appellant was intoxicated at the time of the shooting, the trial court highlighted the following relevant actions by Appellant following the shooting:

- By 6:45 [a.m.], Appellant was sending text messages to his children. The texts included clearly expressed sentiments such as "Good morning! I love you both with all my heart."

- The police found [Wife's] pink cell phone inside Appellant's car after they arrested him. Review of the phone's contents revealed that[,] by 9:00 [a.m.,] Appellant had begun using that phone to text [Wife's] co-workers and friends to make it appear that she was still alive, specifically by sending messages saying that she was ill and would miss work, *etc.* In fact, these texts contained at least one rather callous reference (given that [Wife] had been shot in the head) to [Wife] having a "headache."

- Appellant was sober enough to leave a note in the room where [Wife's] body was later discovered, saying:

  > "I killed [Wife]. Next of kin of [D.K.] … My attorney is [J.E.]. He has my will. Phone number [xxx-xxx-xxxx]. My ex-wife will need access to the house to get our children's things. Everything goes to them. She has keys. [Ex-Wife, xxx-xxx-xxxx]. The dogs are harmless. They are in the basement, Ari and Chloe. If my kids want[] them, they can take the dogs. Sorry for all of this. John Grazioli. The password for my phone (black) is [xxxxxx]."

Trial Court Opinion, 8/8/19, 7-8 (record citations omitted).

Appellant proceeded to be tried by a jury at a trial that commenced on February 4, 2019. On direct review, we summarized the trial evidence as follows:

> Ex-Wife testified that during her telephone conversation following the shooting, "at no point [had Appellant] claimed that the killing was a result of any drug impairment or intoxication. She did not testify that he claimed it was an accident."
>
> Appellant testified on his own behalf to the following. On the evening of March 7, 2018, he and Wife both consumed alcohol, cocaine, and marijuana. Appellant additionally took one Ativan. Later, he and Wife were in bed, and Wife was facing away from him because the dog was lying against her. Appellant told Wife, "Here's your present." Wife could not roll over because of the dog, but she turned her head and said, "Thanks, Babe." Appellant showed Wife the gun, and pulled the "slide" on it to show her how

to load the weapon. At trial, Appellant stated he did not know if the gun had a safety mechanism, but he believed there was a "push button" to unload the weapon. Appellant testified that as he attempted to unload the gun, he pressed "a button on the side" with his thumb and squeezed the trigger causing the weapon to discharge into the back of Wife's head. After shooting Wife, Appellant pulled the covers over her head. Later that morning, he wrote letters to his children. Instead of calling authorities, Appellant went to eat lunch and attend mass, where he had the opportunity to see his children. Appellant did not call any other witnesses and did not present expert testimony. Significantly, he did not present evidence that would corroborate his claim of intoxication.

Finally, we note firearms expert witness, Pennsylvania State Police Corporal Dale Wimer, testified that Appellant's "firearm discharged at approximately 10 pounds of trigger-pull weight," and it was highly unlikely "that the firearm could discharge accidently."

*Commonwealth v. Grazioli*, 2020 WL 1158730, *2-3 (Pa. Super., filed Mar. 10, 2020) (unpublished memorandum) (685 WDA 2019) (record citations omitted).

Appellant requested that the trial court provide a voluntary intoxication jury instruction. **See** Pa. SSJI (Crim) 8.308(B) (jury may be instructed voluntary intoxication is a defense to the crime of murder in the first degree). The Commonwealth objected and the court denied Appellant's request. **See** N.T. Trial, 2/7/19, 5. The jury found Appellant guilty of the above-referenced offenses. On April 5, 2019, the court sentenced Appellant to an aggregate term of life imprisonment without parole. **See** Order (sentencing), 4/5/19, 1. Appellant did not file a post-sentence motion. In his timely-filed direct appeal, he challenged the trial court's denial of his request to give the proposed jury instruction for voluntary intoxication or drugged condition as a defense to first-

degree murder.  ***See Grazioli***, 2020 WL 1158730 at *3-6.  On March 10, 2020, we affirmed the judgment of sentence.  ***See Commonwealth v. Grazioli***, 229 A.3d 335 (Pa. Super. 2020) (table) (685 WDA 2019).  Appellant did not seek further review with our Supreme Court.

On January 21, 2021, Appellant timely filed a *pro se* PCRA petition.  In an earlier collateral review appeal, we addressed the procedural history of that petition as follows:

> [The] *pro se* PCRA petition rais[ed] eight claims of trial and appellate counsel ineffectiveness, and one sentencing issue.  The court thereafter appointed Tina Fryling, Esq[uire], as counsel for Appellant.  Attorney Fryling filed a supplemental petition, simply incorporating by reference all the averments set forth in Appellant's *pro se* petition.  The PCRA court found Attorney Fryling's supplemental petition inadequate[] and ordered her to file another supplemental petition "identifying, distilling[,] and presenting in legal terms those *pro se* claims which counsel believes have legal merit."  PCRA Court Order, 5/7/21, at 2.
>
> On June 4, 2021, Attorney Fryling filed an amended, supplemental petition raising six claims of trial and [direct appeal] counsel ineffectiveness.  The Commonwealth thereafter filed a response, as well as a motion to dismiss Appellant's petition.  On September 16, 2021, the PCRA court issued a [Pennsylvania Rule of Criminal Procedure] 907 notice of its intent to dismiss Appellant's petition without a hearing.  Appellant, via Attorney Fryling, filed two responses to the Rule 907 notice, as well as a supplemental PCRA petition adding another claim of trial counsel ineffectiveness.  Counsel asked, *inter alia*, that the court conduct an evidentiary hearing.  On November 10, 2021, the court issued another [Rule] 907 notice of its intent to dismiss, stating that it accepted Appellant's amended petition, but deemed meritless the additional ineffectiveness claim raised therein.
>
> On December 2, 2021, Appellant filed a *pro se* response to the court's Rule 907 notice.  Therein, he claimed that Attorney Fryling had acted ineffectively by raising certain of his post-conviction

claims inaccurately/incorrectly. Appellant requested that the PCRA court address his ineffectiveness claims pertaining to Attorney Fryling under *Commonwealth v. Bradley*, 261 A.3d 381, 401 (Pa. 2021) (holding "that a PCRA petitioner may, after a PCRA court denies relief, and after obtaining new counsel or acting *pro se*, raise claims of PCRA counsel's ineffectiveness at the first opportunity to do so, even if on appeal"). On December 8, 2021, the PCRA court issued a memorandum and final order acknowledging Appellant's ineffectiveness claims against Attorney Fryling, but stating that it was not permitted to consider Appellant's *pro se* filing under the rule precluding hybrid representation. *See* Memorandum and Order, 12/8/21, at 2 (citing *Commonwealth v. Willis*, 29 A.3d 393, 400 (Pa. Super. 2011)). That same day, the court issued an order dismissing Appellant's petition.

Attorney Fryling filed a timely notice of appeal on Appellant's behalf. On January 13, 2022, Appellant filed with this Court a *pro se* petition, again alleging Attorney Fryling's ineffectiveness and asking that we remand for the appointment of new counsel in accordance with *Bradley*. On January 20, 2022, Attorney Fryling filed an "Application to remand for a *Grazier*[1] Hearing and/or to Appoint Substitute Counsel." On February 1, 2022, this Court issued a *per curiam* order remanding for the PCRA court to hold a *Grazier* hearing and "determine whether Appellant wishes to proceed *pro se* and if Appellant's decision to proceed *pro se* is knowing, voluntary, and intelligent." Order, 2/1/22, at 1 (single page).

[1] *Commonwealth v. Grazier*, 713 A.2d 81 (Pa. 1998).

On February 17, 2022, the PCRA court notified this Court that it had conducted a *Grazier* hearing on February 14, 2022. There, Appellant indicated that he did not want to proceed *pro se*, and he agreed to continue with Attorney Fryling as his counsel. *See* Response to Order, 2/17/22, at 1 (unnumbered). However, on February 24, 2022, Appellant once again filed a *pro se* petition requesting that we remand. Appellant stated that our initial remand for a *Grazier* hearing was improper, as he had never expressed his desire to proceed *pro se* but had, instead, asked for the appointment of new counsel so he could assert claims of Attorney Fryling's ineffectiveness under *Bradley*. Therefore, he requested that we remand for new counsel to be appointed.

On March 1, 2022, we issued a *per curiam* order directing the PCRA court to appoint Appellant new counsel within 14 days of the date of our order. We directed Appellant's new counsel to file a [Pennsylvania Rule of Appellate Procedure] 1925(b) concise statement of errors complained of on appeal within 21 days of being appointed. We also ordered the PCRA court to thereafter file a Rule 1925(a) opinion. On March 15, 2022, the PCRA court appointed William J. Hathaway, Esq., to represent Appellant, and ordered Attorney Hathaway to file a Rule 1925(b) statement within 21 days. Attorney Hathaway timely filed a Rule 1925(b) statement, and the court thereafter filed a Rule 1925(a) opinion.

*Commonwealth v. Grazioli*, 2023 WL 3018996, *1-2 (Pa. Super., filed Apr. 20, 2023) (unpublished memorandum) (1538 WDA 2021).

After Attorney Hathaway filed a brief raising nine claims of prior counsel ineffective assistance, Appellant filed another *pro se* petition for remand on October 27, 2022, in which he, *inter alia*, averred that Attorney Hathaway acted ineffectively by filing an appellate brief that waived certain claims for our review. On November 10, 2022, we issued a *per curiam* order denying Appellant's petition, citing *Grazier*'s rule that an appellant cannot request to proceed *pro se* after his counsel has filed an appellate brief. *See* Order, 11/10/22, at 1 (single page) (citing *Grazier*, 713 A.2d at 82). The Commonwealth thereafter filed a brief, arguing that several of Appellant's claims should be rejected because he failed to cite to the record and presented claims that were speculative, conclusory, and vague. On November 28, 2022, Appellant filed another *pro se* petition, again averring that Attorney Hathaway acted ineffectively by filing an appellate brief that waived multiple issues for review. Rather than seek a remand to proceed *pro se* under *Grazier*, Appellant's petition requested a remand for the appointment of new counsel.

On April 20, 2023, we agreed that Attorney Hathaway waived the majority of Appellant's issues and that Appellant was prejudiced by counsel's inadequate representation because we were unable to meaningfully assess Appellant's claims of ineffectiveness against Attorney Fryling due to briefing errors by Attorney Hathaway. *See Grazioli*, 2023 WL 3018996 at \*4. We also noted that the PCRA court never addressed the substance of Appellant's ineffectiveness allegations against Attorney Fryling. *See id.* at \*5. Accordingly, we vacated the PCRA court's dismissal order, remanded for the appointment of new counsel, and directed further development of the record regarding Appellant's ineffectiveness claims pertaining to Attorney Fryling. *See id.*; *Commonwealth v. Grazioli*, 297 A.3d 735 (Pa. Super. 2023) (table) (1538 WDA 2021).

On April 26, 2023, the PCRA court issued an order, appointing the Erie County Office of the Public Defender as counsel for Appellant, directing the filing of an amended PCRA petition, and offering an evidentiary hearing "upon [the] request of counsel." Order (PCRA counsel appointment and further review), 4/26/23, 1. On September 28, 2023, Appellant filed, through counsel, an amended PCRA petition asserting that prior PCRA counsel provided ineffective assistance by failing to plead and prove that trial counsel was ineffective for: (1) "advancing two contradictory and/or incongruous defenses at trial" (*i.e.*, accident and diminished capacity), *see* Amended PCRA Petition, 9/28/23, ¶¶ 34-42 (omitting unnecessary capitalization); (2) "pursuing lines of questioning during his direct examination of [Appellant] that unnecessarily

opened the door to cross-examination about matters unrelated to this defense," *id.* at ¶¶ 43-47; (3) failing to object or seek a mistrial concerning the Commonwealth's cross-examination of Appellant with respect to communications in an online messenger application (Kik) in which Appellant pursued an extramarital affair because his wife was supposedly "not giving [him] what [he] want[ed]," *id.* at ¶¶ 48-52; (4) failing to challenge the firearm/ballistics evidence through an expert for the defense and/or failing to cross-examine the Commonwealth's firearms expert on the manufacturer's specifications for the used firearm, *see id.* at ¶¶ 53-59; (5) not objecting to a material misstatement in the Commonwealth's closing argument, *see id.* at ¶¶ 60-67; and (6) failing to assert on direct appeal that the trial court erred when it crafted its jury instruction on the PIC offense, *see id.* at ¶¶ 68-76. At the PCRA court's direction, the Commonwealth filed a response to the amended PCRA petition. *See* Order (Commonwealth response), 10/2/23, 1; Commonwealth's Response, 12/5/23, 1-8.

On March 26, 2024, the PCRA court presided over an evidentiary hearing at which Appellant presented testimony from his trial counsel (Brian Arrowsmith, Esquire) and his former PCRA counsel (Attorney Fryling). On April 5, 2024, Appellant filed supplemental exhibits for the hearing with the PCRA court which included photographs of the used gun's instruction manual and case. On July 19, 2024, the PCRA court filed an order dismissing Appellant's petition and an opinion addressing the court's conclusions that the Appellant's ineffective assistance of counsel claims did not compel a grant of

relief. *See* Order (PCRA petition dismissal), 10/19/24; PCRA Court Opinion, 7/19/24. Appellant timely filed a notice of appeal and a court-ordered concise statement of errors complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b).[2] *See* Notice of Appeal, 8/19/24; Order (Rule 1925(b)), 8/23/24; Rule 1925(b) Statement, 9/13/24. With respect to the issues presently raised on appeal, the PCRA court's subsequent Rule 1925(a) opinion relied on its former July 19, 2024 opinion. *See* PCRA Court Opinion, 9/17/24, 3.

Appellant presents the following questions for our review:

1.    Did the PCRA court make factual findings unsupported by the record and/or err when it dismissed Appellant's claim that [PCRA] counsel rendered ineffective assistance by failing to raise trial counsel's ineffectiveness for advancing two contradictory and/or incongruous defenses at trial, namely, accident and diminished capacity?

2.    Did the PCRA court make factual findings unsupported by the record, ignore facts in evidence, and/or err when it dismissed Appellant's claim that PCRA counsel rendered ineffective assistance by failing to raise trial counsel's ineffectiveness for not cross-examining the Commonwealth's firearms expert about the manufacturer's specifications for the firearm?

_____

[2] Because the thirty-day deadline for filing a timely notice of appeal fell on Sunday, August 18, 2024, Appellant would have had until Monday, August 19, 2024, to file the notice. *See* Pa.R.A.P. 107 (incorporating by reference the rules of construction in the Pennsylvania Rules of Judicial Administration including Pa.R.J.A. 107(a)-(b), relating to computation of time for the rule of construction relating to the exclusion of the first day and inclusion of the last date of a time period and the omission of the last day of a time period which falls on Sunday, Saturday, or a legal holiday).

3.    Did the PCRA court make factual findings unsupported by the record and/or err when it dismissed Appellant's claim that PCRA counsel rendered ineffective assistance by failing to raise appellate counsel's ineffectiveness for abandoning on direct appeal the claim that the trial court gave an erroneous instruction for possession of an instrument of crime?

4.    Did the PCRA court make factual findings unsupported by the record and/or err when it dismissed Appellant's claim that PCRA counsel rendered ineffective assistance by failing to raise trial counsel's ineffectiveness for not objecting to a material misstatement made by the prosecutor during closing [argument] about the Commonwealth's examination of D[octor] Eric Vey?

5.    Did the PCRA court make factual findings unsupported by the record and/or err when it dismissed Appellant's claim that PCRA counsel rendered ineffective assistance by failing to raise trial counsel's ineffectiveness for pursuing lines of questioning during the direct examination of Appellant that unnecessarily opened the door to cross-examination about matters unrelated to his defense?

Appellant's Brief, 6-7 (suggested answers, answers of the PCRA court, and unnecessary capitalization omitted).

In reviewing an order denying a PCRA petition, our standard of review is well-settled:

[O]ur standard of review from the denial of a PCRA petition is limited to examining whether the PCRA court's determination is supported by the evidence of record and whether it is free of legal error. The PCRA court's credibility determinations, when supported by the record, are binding on this Court; however, we apply a *de novo* standard of review to the PCRA court's legal conclusions.

***Commonwealth v. Sandusky***, 203 A.3d 1033, 1043 (Pa. Super. 2019) (citations and quotation marks omitted).

To prevail on an ineffective assistance of counsel claim, the petitioner must establish: "(1) his underlying claim is of arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) the petitioner suffered actual prejudice as a result." *Commonwealth v. Spotz*, 84 A.3d 294, 311 (Pa. 2014). The failure to satisfy any prong of the test for ineffectiveness will cause the claim to fail. *See Commonwealth v. Chmiel*, 30 A.3d 1111, 1128 (Pa. 2011). To establish prejudice, "the petitioner must show that there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's ineffectiveness." *Id.* at 1127-28. "Pennsylvania law presumes counsel has rendered effective assistance." *Commonwealth v. Mullen*, 267 A.3d 507, 512 (Pa. Super. 2021).

Appellant's claims are focused on the effectiveness of his prior counsel. They are all layered ineffectiveness claims, challenging the effectiveness of prior PCRA counsel for not previously raising ineffectiveness claims focusing on his trial and direct appeal counsel.[3] We will address Appellant's claims in the order in which he presents them.

_____

[3] "In determining a layered claim of ineffectiveness, the critical inquiry is whether the first attorney that the defendant asserts was ineffective did, in fact, render ineffective assistance of counsel." *Commonwealth v. Burkett*, 5 A.3d 1260, 1270 (Pa. Super. 2010). "If that attorney was effective, then subsequent counsel cannot be deemed ineffective for failing to raise the underlying issue." *Id.* For our purposes, we will first address Appellant's challenges to his trial and direct appeal counsel's effectiveness before addressing any derivative ineffectiveness on the part of his former post-conviction review counsel.

In his first issue, Appellant asserts that the PCRA court erred when it dismissed his claim that trial counsel provided ineffective assistance by "advancing two contradictory and/or incongruous defenses at trial," *i.e.*, the simultaneous argument that the shooting occurred by accident and that Appellant acted with diminished capacity at the time of the shooting. ***See*** Appellant's Brief, 35-41. He argues the defenses were contradictory because the accident defense required him to recount, in detail, the moments leading up to and immediately after the shooting, while the diminished capacity defense sought to explain to the jury that he lost control of his faculties such that he was incapable of forming a specific intent to kill at the time of the shooting. ***See id.*** at 36-39.

Appellant reasons that the dual defense strategy was "logically inconsistent," and thus the product of ineffective assistance, based on the following passage in this Court's direct review opinion that rejected his claim concerning the absence of a basis for issuing a voluntary intoxication jury instruction:

> Appellant's recalled detail [of the killing] belies any assertion of lost faculty warranting a voluntary intoxication instruction to first[-]degree murder. Appellant cannot claim both that he accidently fired the gun while attempting to unload it and that he was so intoxicated he lost control of his faculties at the time of the shooting. Thus, where Appellant's testimony was presented to a jury as the finder of fact, we can hardly take issue with the jury's rejection of his claimed "accidental shooting" defense as a credibility determination, which this Court will not disturb.

Appellant's Brief, 38 (quoting **Grazioli**, 2020 WL 1158730, at *6). He also asserts that trial counsel lacked a reasonable basis for simultaneously presenting the two defenses because, when presented together, "both theories seem desperate and unpersuasive." Appellant's Brief, 39. He summarily asserts that counsel's use of the dual defenses prejudiced him "because, as acknowledged b[y] the Superior Court, it undermined [his] credibility as a witness." **Id.** at 41.

The PCRA court found, based on its credibility determination with respect to trial counsel's testimony at the PCRA hearing, that raising the dual defenses was within the realm of a reasonable strategy in light of the evidence presented at trial:

> [Trial counsel] credibility testified it was his strategic decision in the fluid, dynamic environment of the trial to attempt to create reasonable doubt in the minds of the jurors (or any of them) about intent to kill, and to present[,] through the testimony of D[octor] Vey, Detective Bolash[,] and [Appellant] there was some level of intoxication, if only to dull [Appellant's] sensibilities, thus making it at least plausible to believe an accident, be it some fumbling with a button or otherwise, occurred while handling the gun. [Trial counsel]'s testimony demonstrated counsel had a reasonable basis to advance the theory of defense that a reduced capacity based on some level of intoxication had an adverse impact on [Appellant's] ability to safely handle a gun and that the resulting handling of the gun which resulted in a fired shot was an accident. The fact the record lacked evidence to support a diminished capacity instruction based on voluntary intoxication does not discount or negate [Appellant's] evidence he used alcohol, cocaine[,] and marijuana with his wife shortly before the incident occurred. Counsel was not ineffective for the effort to "use what he had to work with" in the absence of efforts by police to obtain from [Appellant] evidence upon which to conduct toxicology testing and in the dynamic environment of trial. It is just as foreseeable counsel would have been subject to an ineffective

assistance claim had counsel *not* advanced the arguments which he did and the same convictions had ensued.

PCRA Court Opinion, 7/19/24, 10-11 (trial record citation omitted; emphasis in original). The PCRA court's credibility determinations are binding on this Court. *See Sandusky*, 203 A.3d at 1043.

We agree with the PCRA court's assessment that trial counsel had a reasonable strategy to simultaneously pursue the alternative defenses presented and thus to "use what he had to work with." PCRA Court Opinion, 7/19/24, 11. While it is axiomatic that trial counsel may reasonably make a strategic decision to decline to put forth inconsistent defenses, especially where one defense would undermine the other, trial counsel is generally not precluded from advancing alternative defenses on behalf of a criminal defendant. *See Commonwealth v. McGuire*, 488 A.2d 1144, 1151 n.6 (Pa. Super. 1985) ("The mere fact that, as a matter strategy, a given criminal defendant may choose not to pursue every means of defense available to him does not justify a *requirement* that he choose from one among several alternative defenses.") (emphasis in original).

We held, on direct review, that it was not an abuse of discretion for the trial court to decline to offer a voluntary intoxication or diminished capacity jury instruction, but Appellant nonetheless provided some evidence below that he had ingested alcohol, cocaine, marijuana, and Ativan on the night of the shooting. *See* N.T. Trial, 2/6/19 (p.m.), 26-29. While there was no evidence of the degree of his intoxication at the relevant time of the shooting, trial counsel's use of the alternative defense strategy was obviously intended to

give the jury two alternate pathways to a resolution of the trial that would have benefited Appellant more than the result he actually received: a conviction on a lesser degree of the lead offense based on a successful diminished capacity defense, or a complete avoidance of a murder conviction based on a successful accident defense. Moreover, as the PCRA court notes, an acceptance of some level of intoxication by the jury – even if below the evidentiary threshold for granting a voluntary intoxication instruction – may have suggested that Appellant was more susceptible to firing the gun by accident. While neither defense strategy was particularly viable in light of overwhelming evidence suggesting that that killing was the result of a preconceived plan (including, *inter alia*, the prior communications to Ex-Wife alluding to Appellant's efforts to get the victim "out off [their] lives" and his hope to "have everything resolved" by the day after the shooting), we concur with the PCRA court's conclusion that trial counsel acted with a reasonable strategy within the context of the case presented. ***See Commonwealth v. Rega***, 933 A.2d 997, 1018-19 (Pa. 2007) (to show counsel's strategy lacked a reasonable basis, an appellant must prove that the strategy employed by counsel "was so unreasonable that no competent lawyer would have chosen that course of conduct") (citation omitted).

In his second issue, Appellant argues that the PCRA court erred by dismissing his claim alleging trial counsel was ineffective for not cross-examining the Commonwealth's firearms expert (Corporal Dale Wimer) about the manufacturer's specifications for the firearm used in the shooting. ***See***

Appellant's Brief, 41-47.  Appellant notes that Corporal Wimer determined that ten pounds of trigger pull weight was required to fire the gun and that the gun passed a shock/drop test suggesting that it was not prone to an accident discharge, but Appellant points out that the operating instructions for the gun indicated that it had a trigger pull weight of 5.5 pounds.  *See id.* at 42.  He thus concludes that trial counsel had no reasonable basis for not confronting Corporal Wimer with the manufacture's specification about the trigger pull weight in the instruction manual and the failure to do so prejudiced him.  *See id.* at 43-47.  In addition to the trigger pull weight information, Appellant asserts that cross-examination about information in the manual that an internal safety in the gun could be disengaged by a trigger pull would have been helpful for the jury to understand how he could have accidentally fired the gun.  *See id.* at 45.

The current appellate ineffectiveness claim is focused on trial counsel's failure to impeach Corporal Wimer's testimony with two specific pieces of information from the firearm's instruction manual: (1) the stated trigger pull weight; and (2) the specifications about the gun's internal safety mechanism.  When Appellant raised his related claim in his supplemental PCRA petition, however, it was silent as to cross-examination about the gun's internal safety mechanism.  *See* Supplemental PCRA Petition, 9/28/23, ¶¶ 53-59.  That portion of the current claim — cross-examination about the gun's internal

- 18 -

safety mechanism — is thus waived.[4] *See Commonwealth v. Mason*, 130 A.3d 601, 627 (Pa. 2015) ("it is well-settled that claims raised outside of a court-authorized PCRA petition are subject to waiver"); *Commonwealth v. Lewis*, 63 A.3d 1274, 1278 (Pa. Super. 2013) (raising an issue for the first time on appeal instead of before the PCRA court results in waiver); Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal").

As for the preserved portion of the claim concerning trial counsel's failure to pursue cross-examination on the manual's specification concerning the trigger pull weight, the PCRA court denied relief because the assertion was undeveloped and Appellant failed to demonstrate prejudice:

> Petitioner fails to allege or establish how or why the absence of cross-examination by trial counsel of [Corporal] Wimer concerning [the] manufacturer's specifications constituted ineffective assistance. No nexus between [the] manufacturer's specifications for the gun and [the] advancement of the theory of accidental discharge was sufficiently pled let alone proven by current PCRA counsel.
>
> PCRA counsel's mere averment "[t]he sensitivity of the trigger is of critical importance as to whether [Appellant] accidentally discharged the weapon" does not save this claim. Corporal Wimer

---

[4] Appellant preserved the separate assertion that trial counsel was ineffective for failing to cross-examine Corporal Wimer about the manual specifications for the gun's trigger pull weight. *See* Supplemental PCRA Petition, 9/28/23, ¶¶ 54 ("The defense … did not cross-examine [concerning the] manufacturer's specifications for the handgun, which identified the trigger weight as between 3.2 and 5 pounds."), 58 ("PCRA [c]ounsel lacked a reasonable basis for … not challenging trial counsel's failure to cross-examine Cpl. Wimer on his familiarity with the manufacturer's specifications for this firearm.").

- 19 -

testified about trigger pull. Based upon examination of the weapon and functionality and shock-and-drop testing he performed, Wimer concluded the trigger-pull weight – approximately ten (10) pounds – was normal for the gun. He further concluded [that] the safety mechanism built into the gun to prevent accidental discharge made it highly unlikely the gun accidentally discharged.

Again, no factual averments have been alleged which, if accurate, could establish cause for relief. The bald claim of ineffective assistance for failure to cross[-]examine Corporal Wimer "on his familiarity with the manufacturer's specifications for this firearm" must fail as lacking arguable merit.

Further, trial counsel testified as to his rationale in not cross-examining the witness about trigger pull. "You can have a 10-pound trigger pull and still accidentally fire off a gun. That's the argument that was made by us. They made the opposite argument." Counsel further explained, "As I said, trigger pull, I think that might be more relevant if the shot was fired from across the room or in a different location, but again, a trigger pull here, I don't believe was an absolute issue."

PCRA Court Opinion, 7/19/24, 16-17 (record citations omitted).

We agree with the PCRA court's conclusions that Appellant failed to develop any arguable merit for the instant claim and that cross-examination of the expert as to the manufacturer's specifications on the gun's trigger pull weight would not have had a reasonable likelihood of changing the verdict in this case. In general, Appellant failed to demonstrate how the manufacturer's specifications for the gun called into question the testimony of Corporal Wimer or the conclusion Corporal Wimer made as to his finding of the trigger pull weight in a way that would have been beneficial to an accidental firing defense. That the manual indicated a factory setting of 5.5 pounds of trigger pull weight did not contradict Corporal Wimer's assessment of the gun's

trigger pull weight after an examination, as the trigger pull weight for the gun could have been adjusted from its factory settings.[5]

Moreover, the PCRA court's conclusion that cross-examination about trigger pull weight would not have affected the verdict is supported by Appellant's testimony. Appellant admitted to squeezing the trigger of the loaded gun at the time it went off: "I held the gun like this. I went to push the button with my thumb and the gun went off. I squeezed the trigger when I was pushing the button. She was lying right next to me." **See** N.T. 2/6/19 (p.m.), 34. Appellant's testimony did not suggest that the gun went off because of insufficient trigger pull weight. His account, at most, was that he mistakenly mishandled the gun when he admittedly squeezed the gun's trigger

---

[5] While Appellant only moved photocopies of a limited number of pages of the gun's manual into the PCRA court's record, **see** Supplemental Exhibits, 4/5/24, full copies of the manufacturer's manual for that type of gun, that are publicly available online, demonstrate that the trigger pull weight for Glock handguns of that model can easily be adjusted with the use of different connectors and trigger springs to change the gun's trigger pull weight within the weight range determined by Corporal Wimer:

CONNECTORS/TRIGGER SPRINGS:
GLOCK offers different connectors (24) and trigger springs (25), which can be used in combination to adjust the trigger pull from approximately 4.5-11.2 lbs. / 20-50N. The available trigger pull combinations can easily be changed by a GLOCK-Certified Armorer.

Glock Safe Action Pistols Manual for Models G17-G48, 43, available at https://us.glock.com/-/media/Global/US/old/US-Site/83-Downloadable-Materials/2024/GLOCK_Owners_Manual_G17_48_040424.ashx.

which caused it to fire. With this testimony, cross-examination on the manufacturer's specifications for the trigger pull weight would not have had a reasonable likelihood of affecting the verdict reached.

In his third issue, Appellant asserts that the PCRA court erred by rejecting his claim that direct appeal counsel was ineffective for abandoning a preserved issue of trial court error with respect to the jury instruction for PIC. *See* Appellant's Brief 47-51. The instruction at issue included the following:

> Now, at Count 4[,] the defendant is charged with possessing a criminal instrument. In order to find the defendant guilty of possessing a criminal instrument[,] as charged, you first must be satisfied that the following three elements have been proven beyond a reasonable doubt: [f]irst, that the defendant possessed a certain item. Here[,] that is a handgun, a nine[-]millimeter Glock.
>
> Now, for a person to possess an item he must have the power to control and the intent to control that item. And second, that the item, the gun here, was an instrument of crime, something that can be made specially for criminal use. And I will charge you that that handgun is an instrument of crime in this case.
>
> Now, third, this is the important part, that the defendant possessed the item with the intent to attempt or to commit a crime with it. Now, once again, the Commonwealth has charged here that the crime the defendant intended to commit with the instrument alleged was murder.

N.T. Trial, 2/7/19, 103-104.

After the conclusion of the trial court's jury instructions, trial counsel objected to the above instruction and the court denied the objection as follows:

> [TRIAL COUNSEL]: […] Your Honor, I believe in the charge that you gave for possessing instruments of crime, I believe that you

- 22 -

instructed the jury that the gun was an instrument of crime which would indicate from the bench that a crime has been committed here. The Judge -- the jury is the finders of fact. It's up to them to decide whether there's been a crime.

I believe that Your Honor's charge that the gun was an instrument of crime needs either a curative instruction or it may even be grounds for a mistrial.

THE COURT: They have to prove the -- the basic thing they have to prove here is the intent to employ it criminally. There's no question about it that a handgun like this, especially as used in this case, is an instrument of crime. And that's what I charged the jury.

[TRIAL COUNSEL]: I have my objection to the record. Thank you.

N.T. Trial, 2/7/19, 113-14.

In the derivative ineffectiveness claim presented to the PCRA court, Appellant asserted that direct appeal counsel should have raised this preserved claim of error in the direct appeal. *See* Supplemental PCRA Petition, 9/28/23, ¶¶ 68-76. Appellant argued that the court's charge "that that handgun is an instrument of crime in this case," invaded the jury's function as the sole fact finder at trial. *Id.* at ¶ 71. He also argued that the court's "remarks conveyed to the jury that [the court] disbelieved [his] explanation for the shooting and that [he] was, in fact, guilty of a crime." *Id.* at ¶ 73.

The PCRA court found that the ineffectiveness claim lacked arguable merit because it correctly charged the jury on the elements of PIC and left it to the jury to decide whether that crime occurred:

In instructing the jury the gun was an instrument of crime, the court did not remove from the province of the jury its task in

- 23 -

determining whether [the] offense of [PIC occurred]. It would defy logic the gun would not be an instrument of crime here, where [Appellant] testified at trial he shot his wife. Pivotal for the jury to determine was whether the element of possession of the item with the intent to employ it criminally was satisfied. The court informed the jury "this is the important part[,"] and it is readily apparent from the record the [c]ourt left it up to the jury to determine whether the element of intent and thus whether all elements of the crime[,] were satisfied. The claim is wholly lacking in arguable merit[] and would not have been successful if made on direct appeal.

PCRA Court Opinion, 7/19/24, 23.

"In reviewing a jury charge, we determine whether the trial court committed a clear abuse of discretion or an error of law which controlled the outcome of the case." ***Commonwealth v. Jones***, 323 A.3d 13, 21 (Pa. Super. 2024) (citation omitted), ***appeal denied***, 333 A.3d 308 (Pa. 2025); ***see also Commonwealth v. Davis***, 326 A.3d 988, 994 (Pa. Super. 2024) ("Only where there is an abuse of discretion or an inaccurate statement of the law is there reversible error."), ***appeal denied***, 338 A.2d 112 (Pa. 2025). Moreover,

[a] trial court has broad discretion in formulating and delivering instructions to a jury. When reviewing the exercise of that discretion, **an appellate court must evaluate the trial court's instruction as a whole to determine if it was fair or prejudicial**. A trial court may use such language as it chooses, so long as the law is clearly, adequately, and accurately presented to the jury for its consideration. We will not rigidly inspect a jury charge, finding reversible error for every technical inaccuracy, but rather evaluate whether the charge sufficiently and accurately apprises a lay jury of the law it must consider in rendering its decision. **Error cannot be predicated on isolated excerpts of the charge, but it is the general effect of the charge that controls**.

***Commonwealth v. Drummond***, 285 A.3d 625, 634-35 (Pa. 2022) (footnotes and quotation marks omitted; emphasis added).

Instantly, our review of the instruction at issue fails to reveal an abuse of discretion or an error of law on the part of the trial court. The charge, when viewed as a whole, more than adequately covered all the elements of PIC, and most importantly, it did not invade the jury's role as the trial fact finder because it made clear, before the identification of the elements for consideration, that the jury – and not anyone else, including the trial court – would decide whether the elements for the offense were sufficiently proven by the evidence presented. **See** N.T. Trial, 2/7/19, 103 ("In order to find the defendant guilty of [PIC] as charged, **you first must be satisfied** that the following three elements have been proven beyond a reasonable doubt…") (emphasis added).

When the trial court stated, "And I will charge you that that handgun is an instrument of crime in this case," it was merely directing the jury to the item for their consideration as an instrument of crime. This is apparent because the reference immediately followed the court's instruction on the second element of possessing an instrument of crime. **See** N.T. Trial, 2/7/19, 104 ("And second, that the item, the gun here, was an instrument of crime, something that can be made specially for criminal use.").

We do not find that the trial court gave an erroneous instruction on PIC or improperly injected improper findings of fact that the gun in question was in fact an instrument of crime or that a crime had been committed. Even

assuming *arguendo* that we were persuaded by Appellant's reading of the instruction, it is unclear how he would be prejudiced by direct appeal counsel's failure to raise a related claim given the exact wording of the PIC instruction. It is hornbook law that a handgun, depending on the possession and the intent of the person possessing it, may fit within the statutory definition of an instrument of crime. ***See, e.g., Commonwealth v. Monroe***, 422 A.2d 193, 195 (Pa. Super. 1980) ("A handgun is clearly an instrument of crime as defined in subsection (a) [of 18 Pa.C.S. § 907]"). There was no dispute in this case that the victim was killed with the handgun in question, and Appellant's testimony, as acknowledged above, admitted his squeezing of the gun's trigger.

Additionally, Appellant's dual defenses were aimed at expressing a lack of criminal intent or a diminished capacity to form such an intent, Appellant's possession of the gun and that the handgun was charged as the item at the focus of the PIC charge were never in dispute. ***See*** Bills of Information, 5/29/18, 1 (count four identifying the charged instrument of crime as "a Glock 9 mm handgun") (unnecessary capitalization omitted). Even a generous reading of the court's PIC instruction in the light Appellant suggests would not support finding a reasonable likelihood that the verdict in this case would have been different had the PIC instruction been reworded.

In his fourth issue, Appellant alleges that trial counsel was ineffective for not objecting to a material misstatement by the prosecutor in the Commonwealth's closing argument concerning testimony from Doctor Eric

Vey, who performed the autopsy on the victim and testified at trial as an expert in forensic pathology. *See* Appellant's Brief, 51-55. Appellant refers us to the following passage of the Commonwealth's closing argument:

And [Doctor Vey] tells you, because [the prosecutor] asked him, "D[octor] Vey, is this wound consistent with someone standing up at the end of the bed and shooting at an individual laying down on their left side?" And D[octor] Vey, the expert witness, says, "Yes, based on the trajectory forward, slightly leftward, slightly downward, that is consistent."

Appellant's Brief, 52 (quoting N.T. Trial, 2/7/19, 70-71). He asserts that trial counsel should have objected to that portion of the closing argument or requested a new trial based on a material misstatement in the remarks because "D[octor] Vey never offered any opinion as to whether the shooter was standing, shooting, kneeling, lying down or in some other position when the weapon was fired." *Id.*; *see also id.* at 53 (alleging "This claim of trial counsel ineffectiveness has arguable merit, as the record is clear that D[octor] Vey did not testify as to the position of the shooter."). He argues that he was prejudiced by the lack of an objection because "the defense's silence on this issue meant trial counsel knew that Appellant's version [of the events] would not be consistent with the evidence." *Id.* at 55.

The PCRA court's evaluation of this claim was threefold. First, the court concluded that there was no arguable merit because "[t]he cited passage from the Commonwealth's closing argument did not constitute reversible error" where "the Commonwealth's comments were not of the nature so as to have the unavoidable effect of prejudicing [t]he jury, forming in their minds fixed

bias and hostility toward the defendant so that they could not weigh the evidence objectively and render a true verdict." PCRA Court Opinion, 7/19/24, 20 (citation omitted). The court also noted that it instructed the jurors that the parties' closing arguments were not evidence and that the jurors were not required to accept either party's argument. *See id.* at 20-21. Second, the court found, based on its credibility determination as to trial counsel's testimony at the PCRA hearing, that counsel had a reasonable basis for not objecting to the prosecutor's comment because he wanted to avoid drawing the jurors' attention to the remark. *See id.* at 21 ("It cannot be said no competent counsel would have not chosen to object at that time in this instance."). Lastly, the court reasoned that the remark in question did not prejudice Appellant "in the face of the overwhelming evidence of [his] guilt of the crimes charged." *Id.*

The prosecutor's assertion that Doctor Vey's testimony supported the notion that the shooter was standing at the end of the bed at the time of the shooting was a mischaracterization of the testimony. Doctor Vey testified that the victim was shot in the back of her head near the base of her skull and, based on the presence of soot and burnt and unburnt gunpowder on her, the range of fire was "close," meaning there was a half of an inch to six or eight inches between the gun's muzzle and the victim's skin surface. *See* N.T. Trial, 2/5/19, 65-71. Doctor Vey did not express any opinion as to the relative positions of the victim and shooter, other than that implicit in the stated close-range distance and the trajectory of the bullet being consistent with the victim

lying in bed when the bullet entered the back of her skull. *Id.* at 65-71, 80-81. While we agree with Appellant that the prosecutor's argument strayed from the record evidence, we cannot find fault with the PCRA court's analysis of the ineffectiveness claim.

As stated by the PCRA court, "[c]omments by a prosecutor constitute reversible error only where their unavoidable effect is to prejudice the jury, forming in the jurors' minds a fixed bias and hostility toward the defendant such that they could not weigh the evidence objectively and render a fair verdict." ***Commonwealth v. Eichinger***, 108 A.3d 821, 836 (Pa. 2014) (citation omitted); ***see also Commonwealth v. Anderson***, 327 A.3d 273, 282 (Pa. Super. 2024) ("Reversible error occurs if the prosecutor has deliberately attempted to destroy the factfinder's objectivity."). An ineffectiveness claim based on counsel's failure to object to a prosecutor's closing argument has merit where it is demonstrated that the comment deprived the petitioner of a constitutional or statutory right, such as the right to a fair trial or due process. ***See Commonwealth v. Tedford***, 960 A.2d 1, 28-29 (Pa. 2008). "The touchstone is the fairness of the trial, not the culpability of the prosecutor." *Id.* at 28.

We agree with the PCRA court that the erroneous characterization of one part of Doctor Vey's testimony was not so egregious or even material that it rendered the jury unable to properly weigh the evidence and render a true verdict. Here, the exact position of Appellant at the time of the shooting was not a crucial factor in determining his guilt. Appellant could have been in bed

with the victim at the time of the shooting, consistent with his own version of the events, and there was still overwhelming evidence that he fired the gun with a purposeful intent based on the evidence that he brought the loaded gun to the bed, that the victim was shot in the back of the head, that he warned his ex-wife in advance of the shooting that he was "getting [the victim] out of [their] lives," that he made sure his children would not be home at the time of the shooting, and his efforts to delay the discovery of his wife's death by using her phone to communicate with others as if he were his wife. Given the overwhelming evidence of guilt and the fact that Appellant's position at the time of the shooting was not material to a determination of his intent here, we concur with the PCRA court's analysis with respect to the arguable merit and prejudice prongs of our ineffective assistance of counsel standard.[6]

We also agree with the PCRA court's conclusion that trial counsel had a reasonable basis for not objecting to the closing argument remark at issue because it would draw more attention to the defective argument being made.

_____

[6] Our conclusion that the mischaracterization by the prosecutor did not compel a grant of relief is additionally supported by the fact that any possible prejudicial effect of the prosecutor's remark was mitigated by the trial court's instruction to the jury that the arguments of counsel were not to be accepted by the jury as evidence upon which their verdicts could be based. *See* N.T. Trial, 2/7/19, 95-96 ("Now, the speeches of counsel are not part of the evidence and you should not consider them as such. … You should be guided by each lawyer's arguments to the extent that they are supported by the evidence…"); *see **Commonwealth v. Cooper***, 941 A.2d 655, 664 (Pa. 2007) ("A misstatement by counsel when referring to evidence does not necessarily demand relief, particularly because the jury is instructed that the arguments of counsel are not evidence.").

This conclusion was consistent with trial counsel's testimony at the PCRA hearing. *See* N.T. PCRA Hearing, 3/26/24, 54 ("Generally speaking, I don't think it's necessarily wise to object to a closing argument. It calls attention for a jury, why would this defense attorney be interrupting a closing argument when that's not even evidence?"). In this instance, the remark at issue was both inconsequential to an ultimate determination on Appellant's criminal intent and an objection ran the risk of refocusing the jury on immaterial matters that would not help Appellant. In the precise circumstances presented, the incorrect characterization of Doctor Vey's testimony did not constitute reversible error and trial counsel acted with a reasonable basis when he declined to raise an objection to it.

In his fifth and final issue, Appellant claims that trial counsel provided ineffective assistance by "pursuing lines of questioning during the direct examination of Appellant that unnecessarily opened the door to cross-examination about matters unrelated to his defense." Appellant's Brief, 55-57. In particular, he takes issue with trial counsel's efforts to ask him about:

> his dating history with the decedent[;] their wedding[;] his prior marriage[;] the fact that the prior marriage ended in divorce[;] the fact that he and his prior wife had "custody issues[;"] what the status of the custody negotiations were[;] the ongoing animosity between he and his first wife about how to raise the kids[;] how his current wife treated his children badly[;] how his current wife hurt his children's feelings[;] how he felt hurt when his wife hurt his children[;] how his wife told the kids that, when they had their own kids, they would exclude them from trips[;] how his wife did not respond to the kids' "I love you" the day before she died[;] how his wife was struggling with being a stepmother[;] how a counselor had to force Appellant and his ex-

wife to speak civilly with one another[;] how he would choose his kids over his wife if he had to[;] why he wrote his wife out of his will[;] how he had to explain away his wife's bad behavior to the kids when they asked about things she had done[;] how his wife's role as a stepmother was a "big weight" in his custody case[; and] his intention to file for divorce[.]

*Id.* at 56. He asserts that these lines of direct examination gave the Commonwealth "license to cross-examine into all of th[ose] matters" and the resulting cross-examination into those areas "only served to cast [him] in bad light to the jury, as it continued to emphasize salacious and embarrassing details of his life and current and past relationships." *Id.* at 57. He also baldly asserts that trial counsel had no reasonable basis for pursuing these lines of questions and that the strategy behind pursuing these questions prejudiced him. *See id.*

The PCRA court found that this allegation of ineffectiveness did not merit relief because trial counsel had a reasonable basis for pursuing the lines of direct examination objected to in Appellant's claim and that no prejudice ensued given the "overwhelming evidence of Appellant's guilt:"

> The record demonstrates counsel had a reasonable basis for questioning [Appellant] about these matters. The line of questioning was intended to diffuse the opportunity for the Commonwealth to raise the matters on cross-examination as though [Appellant] was trying to hide them. [Trial counsel] was familiar with trial strategies employed by [the] Commonwealth's counsel … and reasonably expected those strategies, if employed to negatively impact the jury's perception of [Appellant]. [Trial counsel explained],
>
> > [Trial counsel]: … I know [the trial prosecutor] very well and her trial tactics, not only as having a number of cases against her but also being a colleague for five years. She tends, in trials, to say, why didn't you hear

it from defense counsel?  In fact, she did in this case. I knew that if all we presented on direct examination when [Appellant] decided to testify was, everything's great, she would likely get into those things.  My concern was if she got into those things, how [Appellant] would respond to her cross-examination, her style of cross-examination, and what the arguments would be.

[PCRA Prosecutor]: And so[,] you made the strategic or tactical decision that it would be better to broach the subject preemptively with your client on direct rather than allow [the] Commonwealth to bring it up first or --

[Trial counsel]: Yes.  In any case, you've got to know what your defense is, but you have to also know the style of the other attorney, and that proved to be correct in this case.

[Trial counsel] testified [that] if he raised [Appellant's] history as part of the presentation of [Appellant] as a witness on direct, "I get to control the issue a bit better, which was demonstrated on cross."  This line of questioning, intended to diffuse the potential negative impact from information having been brought out for the first time on cross-examination, had a reasonable basis designed to effectuate the client's interests.  *See Commonwealth v. Selenski*, 228 A.3d 8, 16 (Pa. Super. 2020).  "Where matters of strategy and tactics are concerned, a finding that a chosen strategy lacked a reasonable basis is not warranted unless it can be concluded that an alternative not chosen offered a potential for success substantially greater than the course actually pursued." *Id.* (citation omitted).  Trial counsel's strategy was reasonable. The claim must fail.

Furthermore, no prejudice ensued due to the matters [Appellant] was questioned about.  The matters were "*d*[*e*] *minimis*" in the face of the overwhelming evidence of [Appellant's] guilt of the crimes charged, as fully set forth in this [c]ourt's [Rule] 1925(a) [o]pinion on direct appeal, incorporated herein by reference.

PCRA Court Opinion, 7/19/24, 12-13 (footnotes and record citations omitted).

We adopt the PCRA court's analysis of this claim in its entirety. All of the questions noted in Appellant's claim addressed expected challenges to Appellant's testimony on the former state of his relationship with Wife and his expressed lack of intent for his crimes. Trial counsel had a reasonable basis for choosing to address them up front on direct examination as doing so would reduce the sting of the resulting embarrassing and unflattering responses to the questions coming for the first time under cross-examination. Moreover, to the extent that trial counsel had familiarity with the trial prosecutor and knew that she would inevitably pursue the lines of questions that concerned trial counsel, we can hardly conclude that Appellant was prejudiced by trial counsel anticipating the Commonwealth's strategy and steering the direct examination questions to those topics with questions that would be worded more kindly for Appellant than the Commonwealth would choose, and would cast Appellant in a better light with the jury.

Upon our exhaustive review of the instant claims and the record, we are unable to conclude that the PCRA court erred by dismissing Appellant's assertions that his trial and direct appeal counsel provided ineffective assistance. As a result, we need not delve into Appellant's derivative claims that former PCRA counsel provided ineffective assistance by not previously asserting the same challenges to the effectiveness of trial and direct appeal counsel. **See, e.g.**, **Chmiel**, **supra**, 30 A.3d at 1128 ("if the petitioner cannot prove the underlying claim of trial counsel ineffectiveness, then petitioner's derivative claim of appellate counsel ineffectiveness of necessity must fail, and

it is not necessary for the court to address the other two prongs of the [ineffective assistance of counsel] test as applied to appellate counsel"). As Appellant has failed to overcome the presumption of effectiveness with respect to his former counsel, we hereby affirm the PCRA court's dismissal order.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 1/27/2026